Argued and submitted January 10, judgment of circuit court reversed,
and case remanded for entry of judgment in favor of defendants and intervenors
February 21, 2006

Hector MACPHERSON;
Bannockburn Farms, Inc.;
Clackamas County Farm Bureau;
Linn County Farm Bureau;
Washington County Farm Bureau;
Marion County Farm Bureau;
Yamhill County Farm Bureau; David T. Adams;
Mark Tipperman; James D. Gilbert;
Northwoods Nursery, Inc.; David A. Vanasche;
Keith Fishback; Fishback Nursery, Inc.;
Jack Chapin and 1000 Friends of Oregon,
*Plaintiffs-Respondents,*

*v.*

DEPARTMENT OF ADMINISTRATIVE SERVICES,
Risk Management Division,
by and through Laurie Warner, its Acting Director;
Land Conservation and Development Commission,
Department of Land Conservation and Development,
by and through Lane Shetterly, its Director;
and the State of Oregon Department of Justice,
by and through its Attorney General, Hardy Myers,
*Defendants-Appellants,*

*and*

CLACKAMAS COUNTY;
Marion County; and Washington County,
*Defendants,*

*and*

Barbara PRETE;
Eugene Prete; Dorothy English; Howard Meredith;
and Jackson County;
*Intervenors-Defendants-Appellants.*

(CC 05C10444; SC S52875)

130 P3d 308

Russell L. Baldwin, Lincoln City, argued the cause and filed the briefs for appellant Howard Meredith.

Michael D. Jewett, Jackson County Counsel, Medford, argued the cause and filed the brief for intervenor-appellant Jackson County.

Janet A. Metcalf, Assistant Attorney General, argued the cause for appellants Department of Administrative Services,

Land Conservation and Development Commission, and the State of Oregon Department of Justice. With her on the briefs were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, Stephanie Striffler, Special Counsel to the Attorney General, Erika Hadlock and Kaye E. McDonald, Assistant Attorneys General.

James L. Huffman, *pro hac vice*, Tigard, argued the cause for intervenor-appellants Barbara Prete, Eugene Prete, and Dorothy English. With him on the brief were Ross A. Day and David J. Hunnicutt.

Todd S. Baran, Portland, argued the cause and filed the brief for respondents.

John M. Groen, of Groen Stephens & Klinge, LLP, Bellevue, Washington, and Russell C. Brooks, Andrew C. Cook, Pacific Legal Foundation, Bellevue, Washington, filed a brief on behalf of *amicus curiae* Pacific Legal Foundation.

David B. Smith, Tigard, filed a brief on behalf of *amici curiae* Dennis Rasmussen, Harvey Kempema, and Charles Hoff.

David J. Hunnicutt, Tigard, filed a brief on behalf of *amici curiae* Oregon Cattlemen's Association, Oregon State Grange, and Oregonians in Action.

Edward H. Trompke, of Jordan Schrader PC, Portland, filed a brief on behalf of *amici curiae* National Association of Home Builders and Oregon Home Builders Association.

Glenn Klein, of Harrang Long Gary Rudnick, PC, Eugene, filed a brief on behalf of *amicus curiae* League of Oregon Cities.

Jason T. Elder, of Sidley Austin Brown & Wood LLP, Hong Kong, and Carter G. Phillips, Jay T. Jorgensen, and Brian R. Matsui, of Sidley Austin Brown & Wood LLP, Washington, DC, and Scott A. LaGanga, Property Rights Alliance, Washington, DC, filed a brief on behalf of *amici curiae* Property Rights Alliance, American Association of Small Property Owners, Americans for Tax Reform, American Land Rights Association, Bluegrass Institute for Public Policy Solutions, Citizens Against Government Waste, Citizens' Alliance for Property Rights, Defenders of Property Rights,

Illinois Policy Institute, National Center for Public Policy Research, National Taxpayers Union, Oregon Livestock Producers Association, Small Business and Entrepreneurship Council, and The American Family Business Institute.

Dorothy S. Cofield, Cofield Law Office, Lake Oswego, filed a brief on behalf of *amicus curiae* Washington Legal Foundation.

Richard M. Stephens, of Groen Stephens & Klinge LLP, Bellevue, Washington, and William H. Mellor, Jeffrey T. Rowes, Institute for Justice, Arlington, Virginia, and William R. Maurer, Institute for Justice, Washington Chapter, Seattle, Washington, filed a brief on behalf of *amicus curiae* Institute for Justice.

Edward J. Sullivan and Carrie A. Richter, of Garvey Schubert Barer, Portland, filed a brief on behalf of *amici curiae* Oregon Chapter of the American Planning Association and the American Planning Association. With them on the brief was Lisa Gramp.

Charles F. Hinkle, ACLU Foundation of Oregon, Inc., Portland, filed a brief on behalf of *amicus curiae* ACLU Foundation of Oregon, Inc.

DE MUNIZ, C. J.

## DE MUNIZ, C. J.

In this case, we are required to determine the constitutionality of Ballot Measure 37 (2004), a statutory enactment that the people approved at the 2004 General Election.[1] The measure requires government to either compensate landowners for reductions of real property fair market value due to certain "land use regulation[s]" or modify, remove, or not apply such regulations.[2] Plaintiffs filed the present declaratory judgment action in circuit court pursuant to ORS 28.020 and ORS 250.044,[3] seeking to invalidate Measure 37

---

[1] Measure 37 is codified at ORS 197.352. Throughout this opinion, when necessary to refer to specific sections of the measure, we cite to the codification. The full text of Measure 37 is set out in the Appendix.

[2] Measure 37 defines the term "land use regulation" as follows:

"(i) Any statute regulating the use of land or any interest therein;

"(ii) Administrative rules and goals of the Land Conservation and Development Commission;

"(iii) Local government comprehensive plans, zoning ordinances, land division ordinances, and transportation ordinances;

"(iv) Metropolitan service district regional framework plans, functional plans, planning goals and objections; and

"(v) Statutes and administrative rules regulating farming and forest practices."

ORS 197.352(11)(B). In this opinion, we use the term "land use regulation" as Measure 37 defines that term.

[3] ORS 28.020 provides, in part:

"Any person * * * whose rights, status or other legal relations are affected by a * * * statute * * * may have determined any question of construction or validity arising under any such * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder."

ORS 250.044 provides, in part:

"(1) An action that challenges the constitutionality of a measure initiated by the people * * * must be commenced in the Circuit Court for Marion County if:

"(a) The action is filed by a plaintiff asserting a claim for relief that challenges the constitutionality of a state statute * * * initiated by the people or referred to the people under section 1(1) to (4), Article IV of the Oregon Constitution; [and]

"(b) The action is commenced on or after the date that the Secretary of State certifies that the challenged measure has been adopted by the electors and within 180 days after the effective date of the measure[.]

"* * * * *

"(5) If a judgment in an action subject to the requirements of this section holds that a challenged measure is invalid in whole or in part, a party to the action may appeal the judgment only by filing a notice of appeal directly with

on various state and federal constitutional grounds. The trial court agreed with plaintiffs, concluding that Measure 37 (1) impermissibly intruded on the legislature's plenary power; (2) violated the equal privileges and immunities guarantee of the Oregon Constitution; (3) impermissibly suspended the laws in violation of the Oregon Constitution; (4) violated the separation of powers principles of the Oregon Constitution; and (5) violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution. As a result, the trial court declared Measure 37 invalid and entered judgment for plaintiffs. Defendants and intervenors appealed to this court pursuant to ORS 250.044(5). After considering all the parties' arguments on appeal, we reverse the judgment of the trial court.

## I.  FACTS AND PROCEDURAL BACKGROUND

In general, Measure 37 requires state and local governments to compensate private property owners for the reduction in the fair market value of their real property that results from any land use regulations of those governmental entities that restrict the use of the subject properties. As an alternative to the requirement of compensation, however, Measure 37 allows state and local governments to "modify, remove or not * * * apply the land use regulation or land use regulations to allow the owner to use the property for a use permitted at the time the owner acquired the property." ORS 197.352(8). Measure 37 limits compensation and relief from land use regulations to property owners who acquired their property prior to the enactment of the land use regulations that provide the basis for their claims. The people enacted Measure 37 through the initiative process at the 2004 General Election, and the measure became effective on December 2, 2004.

On January 14, 2005, plaintiffs filed the present action, pursuant to ORS 28.020 and ORS 250.044, challenging the validity of Measure 37. Plaintiffs sought a declaration that the measure was unconstitutional based on several provisions of both the Oregon Constitution and the United States Constitution. Plaintiffs named as defendants the

the Supreme Court within the time and in the manner specified in ORS chapter 19 for civil appeals to the Court of Appeals."

Department of Administrative Services, the Land Conservation and Development Commission, and the Department of Justice (collectively, "defendants").[4] Five parties also intervened as defendants in the action, including the chief petitioners for the initiative petition that ultimately was certified to the ballot as Measure 37 (collectively, "intervenors").[5]

Before the trial court, the parties moved for summary judgment respecting plaintiffs' constitutional challenges. Intervenors also raised arguments regarding plaintiffs' standing to challenge Measure 37 and other aspects of justiciability. Following a hearing on September 13, 2005, the trial court issued a written opinion granting plaintiffs' motion for summary judgment and denying the summary judgment motions filed by defendants and intervenors; the trial court also rejected intervenors' arguments regarding standing and justiciability. In so ruling, the trial court accepted certain of plaintiffs' constitutional arguments and entered a judgment on October 24, 2005, declaring that Measure 37 was unconstitutional and invalid. Pursuant to ORS 250.044(5), *see* 340 Or at 121-22 n 3, defendants and the intervenors appealed that judgment directly to this court.

## II.   JUSTICIABILITY

■      We first address the various justiciability issues that certain intervenors have raised. Intervenor English contends that the trial court erred in holding that plaintiffs have standing to assert their claims because none of the plaintiffs can show an actual, concrete impact stemming from Measure 37. We reject Intervenor English's standing argument for the reasons described below.

■      As noted earlier, plaintiffs brought this action under ORS 28.020, Oregon's declaratory judgment statute. To establish standing under ORS 28.020 in a case in which there are multiple plaintiffs, only one plaintiff must show "some

---

[4] Also named as defendants were Marion County, Clackamas County, and Washington County. They are not parties to this appeal.

[5] The intervenors are (1) the chief petitioners Dorothy English, Barbara Prete, and Eugene Prete (collectively, "English"); (2) Howard Meredith; and (3) Jackson County.

injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or validity of a law." *League of Oregon Cities v. State of Oregon*, 334 Or 645, 658, 56 P3d 892 (2002).

Plaintiff Adams meets that criterion. Plaintiffs allege in their complaint that Adams owns residential property in Clackamas County. Adams's neighbor filed a Measure 37 claim, seeking to subdivide his property for residential construction. Under applicable land use regulations, the neighbor could not subdivide his property for that purpose. Prior to the trial court's decision in this case, the Department of Land Conservation and Development decided not to apply the applicable land use regulations and granted permission to the neighbor to subdivide his property. Plaintiffs allege that Adams will suffer the following concrete harms stemming from his neighbor's successful Measure 37 claim: (1) diminished water quantity and quality available to Adams's property; (2) increased traffic; (3) an increased tax burden due to increased enrollment in the local school system; and (4) increased pollution. We conclude that plaintiffs' allegations concerning Adams are sufficiently plausible and concrete to support standing. *See League of Oregon Cities*, 334 Or at 661 (concluding that plaintiffs who submitted evidence regarding "plausible, concrete ramifications" of implementation of ballot measure at issue had satisfied standing requirement of ORS 28.020).

Intervenor Meredith argues that this case is not justiciable for another reason. He contends that plaintiffs' claims are not ripe because their facial challenge to Measure 37 does not present an actual controversy. According to Meredith, an actual controversy does not arise until after a claimant can bring an action for compensation under Measure 37, which, according to the measure, is after 180 days have elapsed following a written demand for compensation. ORS 197.352(6). We disagree.

This court has explained that a ripe claim for declaratory judgment under ORS 28.020 "must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue." *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982). Plaintiffs' claims involve present facts. Measure 37 became effective on December 2, 2004.

As previously explained, plaintiff Adams's neighbor is a Measure 37 claimant. The Department of Land Conservation and Development has decided not to apply the applicable land use regulations in response to the neighbor's claim, thereby allowing the neighbor to subdivide his property. Those facts are "present facts" giving rise to a justiciable controversy, not hypothetical future events.[6]

■　　　Intervenor Meredith also contends that plaintiffs' claims are not justiciable because plaintiffs failed to exhaust their administrative remedies. According to Meredith, plaintiffs were required to comply with procedures outlined in the Oregon Administrative Procedures Act, ORS 183.310 to 183.750, before filing an action to challenge the validity of Measure 37. That argument has no merit for the simple reason that Meredith has not identified any administrative scheme—and we know of none—that, either inherently or by statutory directive, *requires* plaintiffs to proceed through any administrative steps before challenging the constitutionality of Measure 37 under ORS 250.044.

In sum, we conclude that none of intervenors' arguments respecting justiciability of plaintiffs' claims is well taken. We turn to the merits.

### III.　CONSTITUTIONALITY OF MEASURE 37

As noted, the trial court declared Measure 37 to be unconstitutional on five grounds. In this court, in addition to supporting the five grounds that the trial court identified, plaintiffs also renew two constitutional challenges to Measure 37 that the trial court rejected: (1) Measure 37 impermissibly waives sovereign immunity; and (2) Measure 37 violates separation of powers principles by encroaching on executive power and by improperly delegating legislative power without adequate safeguards. We discuss plaintiffs' constitutional challenges below, beginning with plaintiffs' arguments under the Oregon Constitution. *See, e.g., Sealey v.*

---

[6] Meredith also challenges the trial court's decision, under ORCP 23, to allow plaintiffs to amend their pleadings to conform to certain aspects of their evidence. This court will reverse that decision only on a showing of abuse of discretion. *See Engelcke v. Stoehsler*, 273 Or 937, 944-45, 544 P2d 582 (1975) (stating principle under *former* ORS 16.390, *repealed by* Or Laws 1979, ch 284, § 199). We find no abuse of discretion here.

*Hicks*, 309 Or 387, 397, 788 P2d 435 (1990), *overruled in part on other grounds by Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001) ("As is our normal practice, we consider * * * state constitutional challenges before moving on to federal issues.").

A.  *Oregon Constitution*

1.  *Intrusion on the Plenary Power to Legislate*

■       We begin with the trial court's conclusion that Measure 37 is invalid because it unconstitutionally "imposes limitations on government's exercise of plenary power to regulate land use in Oregon[.]" For the reasons set forth below, we disagree with that conclusion.

At its outset, Measure 37 provides:

> "If a public entity enacts or enforces a new land use regulation or enforces a land use regulation enacted prior to December 2, 2004, that restricts the use of private real property or any interest therein and has the effect of reducing the fair market value of the property, or any interest therein, then the owner of the property shall be paid just compensation."

ORS 197.352(1). In lieu of providing just compensation, the measure alternatively allows "the governing body responsible for enacting the land use regulation [to] modify, remove, or not * * * apply the land use regulation or land use regulations." ORS 197.352(8).

In the trial court's view, the foregoing provisions of Measure 37 required the government either to "pay to govern," if it wished to enforce a particular land use regulation, or to refrain from enforcing the regulation in some manner. Based on that reading of the measure, the court held that the measure so eviscerated the legislature's plenary power to regulate land use that the fact "that a later legislature could decide to repeal [the measure's] condition on enforcement [did] not make it permissible."

In our view, the trial court misunderstood the nature of the plenary legislative power. In Oregon, the Legislative Assembly and the people, acting through the initiative or referendum processes, share in exercising legislative power. *See*

Or Const, Art IV, §§ 1(1), (2)(a), (3)(a) (vesting in both bodies the power to propose, enact, and reject laws). Respecting the nature of that power, this court previously has explained that

"[p]lenary power in the legislature, for all purposes of civil government, is the rule, and a prohibition to exercise a particular power is an exception. It, therefore, is competent for the legislature to enact any law not forbidden by the constitution or delegated to the federal government or prohibited by the constitution of the United States."

*Jory v. Martin*, 153 Or 278, 285, 56 P2d 1093 (1936). Thus, limitations on legislative power must be grounded in specific provisions of either the state or federal constitutions. *See, e.g.*, *State v. Hirsch/Friend*, 338 Or 622, 639, 114 P3d 1104 (2005) ("any constitutional limitations on the state's actions must be found within the language or history of the constitution itself" (internal quotation marks and citation omitted)).

Plaintiffs argue that constitutional limits on legislative power need not be express, but can be implied. We agree with that general proposition. As this court previously has stated:

"Our constitution, like all other state constitutions, is not to be regarded as a grant of power, but rather a limitation upon the powers of the legislature. The people[,] in adopting it, committed to the legislature the whole law making power of the state, which they *did not expressly or impliedly* withhold."

*Wright v. Blue Mt. Hospital Dist.*, 214 Or 141, 144-45, 328 P2d 314 (1958) (emphasis added). However, even implied limitations must find their source in some constitutional provision. That is so because, "without such a conflict with a written constitutional provision, there is no basis for any general judicial power to invalidate a law if it is 'bad' enough." Hans Linde, *Without "Due Process" Unconstitutional Law in Oregon*, 49 Or L Rev 125, 130 (1970). A treatise that plaintiffs themselves cite recognizes that same principle:

"The inhibition of a Constitution may be either express or implied; that is[,] the Constitution may expressly prohibit any specified act of the legislature, or the Constitution by its inherent terms may of necessity prohibit certain acts

of the legislature by reason of inherent conflict that would arise *between the terms of the Constitution and the power claimed in favor of the legislature.*"

Thomas M. Cooley, 1 *A Treatise on the Constitutional Limitations* 176 n 4 (8th ed 1927) (emphasis added). Here, however, plaintiffs cite no constitutional provision—and we know of none—that either expressly or impliedly limits the power of the Legislative Assembly or the people, exercising their initiative power, to authorize state or local entities to decide, in accordance with Measure 37, whether to pay just compensation or to modify, remove, or not apply certain land use regulations.[7]

Not only have plaintiffs failed to ground their argument in the Oregon Constitution, but the premise of their argument is also mistaken. Contrary to the assumption underlying their argument, Oregon's legislative bodies have not divested themselves of the right to enact new land use regulations in the future. Nothing in Measure 37 forbids the Legislative Assembly or the people from enacting new land use statutes, from repealing all land use statutes, or from amending or repealing Measure 37 itself. Simply stated, Measure 37 is an *exercise* of the plenary power, not a *limitation* on it.[8] The measure does not impair the plenary power of the Legislative Assembly or the people's exercise of their initiative power. The trial court's contrary conclusion was error.

---

[7] Plaintiffs do *mention* Article IV, section 1, of the Oregon Constitution, but that section merely vests legislative power in the Legislative Assembly and the electorate. The section neither expressly nor impliedly limits the scope of the legislative power; it simply states *where* that constitutional power resides.

[8] Plaintiffs cite to and rely upon a number of cases, but those cases are inapposite. Generally, the cases involved public contracts that purported to contract away state or local governments' ability to enact legislation. *See, e.g., Northern Pacific Railway v. Duluth*, 208 US 583, 596, 28 S Ct 341, 52 L Ed 630 (1908) ("the right to exercise the police power is a continuing one [that] cannot be contracted away"); *Stone v. Mississippi*, 101 US 814, 817, 25 L Ed 1079 (1879) ("the legislature cannot bargain away the police power of a State"); *Morris v. City of Salem*, 179 Or 666, 675, 174 P2d 192 (1946) (authority to exercise police power is implied in a public contract); *see also County Mobilehome Positive Action Com., Inc. v. County of San Diego*, 62 Cal App 4th 727, 73 Cal Rptr 2d 409 (1998) (state cannot abdicate police power by contract; contracts are subject to further exercise of police power); *City of New Albany v. New Albany St. R. Co.*, 172 Ind 487, 87 NE 1084 (1909) ("a city council cannot bargain away or divest itself of the right to make reasonable laws"). Here, Measure 37 does not contract away the plenary power to enact legislation.

## 2. *Violation of Equal Privileges and Immunities*

■     As noted earlier, Measure 37 limits application of its compensation and relief provisions to those landowners who acquired their property prior to enactment of the land use regulations that they wish to avoid. Based on that provision, the trial court held that Measure 37 violated Article I, section 20, of the Oregon Constitution because the measure favored what the trial court characterized as a "true class" composed of property owners who obtained their properties before the relevant land use regulations became effective (the "preowners"). The measure, according to plaintiffs and the trial court, therefore disfavored property owners who obtained their properties after the relevant land use regulations became effective (the "postowners"). After concluding that Measure 37 implicated "true classes," the trial court applied a so-called "rational basis" review and concluded that Measure 37 was not rationally related to any legitimate government interest that would justify treating those "classes" differently. For the reasons set forth below, we disagree with that analysis.

Article I, section 20, provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Article I, section 20, guarantees equality of privileges to each individual citizen as well as to "classes" of citizens. *See State v. Clark*, 291 Or 231, 239, 63 P2d 810 (1981) (Article I, section 20, is a guarantee against unjustified denial of equal privileges as much as against unjustified differentiation among classes of citizens). Some litigants seeking the protection of Article I, section 20, claim—as do plaintiffs here—that a particular "class," of which they are not a member, unlawfully has been accorded a special privilege or status. Other litigants claim that they are members of a "class" suffering disparate treatment without legitimate reason. In either situation, this court consistently has held that the protection that Article I, section 20, affords is available to only those individuals or groups whom the law classifies according to characteristics that exist apart from the enactment that they challenge. *See, e.g.*, *Sealey*, 309 Or at 397 (classes that the challenged law itself creates are not considered "classes" for

purposes of Article I, section 20). That is so because, "every law itself can be said to 'classify' what it covers [as distinct] from what is excludes." *Clark*, 291 Or at 240.

Indeed, this court consistently has rejected challenges to statutes under Article I, section 20, when the statutes themselves have created the alleged classes. For example, in *Hale v. Port of Portland*, 308 Or 508, 525, 783 P2d 506 (1989), *overruled in part on other grounds by Smothers*, 332 Or 83, this court rejected an Article I, section 20, challenge to the Oregon Tort Claims Act (OTCA) because the alleged disfavored class (victims of governmental torts) existed as a class only by virtue of the statutory scheme. Similarly, in *Greist v. Phillips*, 322 Or 281, 292, 906 P2d 789 (1995), this court held that a statute capping noneconomic damages in wrongful death actions at $500,000 did not violate Article I, section 20. The court explained that the challenged law itself created the distinction between persons who could receive more than $500,000 and persons who could not, and that Article I, section 20, did not bar the legislature from creating such distinctions. *Id.*

It is true that, before the adoption of Measure 37, certain property owners had acquired their property prior to the enactment of certain relevant land use regulations, while others had acquired their property after the enactment of certain relevant land use regulations. That distinction between preowners and postowners, however, is significant only by virtue of Measure 37 itself. In other words, the date that an owner acquired property has no significance apart from Measure 37.

Nevertheless, plaintiffs contend that the classes that Measure 37 creates are "fixed" or "closed" and, for that reason, Measure 37 violates Article I, section 20. In so arguing, however, plaintiffs misconstrue this court's precedents in that regard. Plaintiffs correctly note that this court has stated that "[l]aws which are left open for individuals voluntarily to bring themselves within a favored class do not violate Article I, section 20." *Wilson v. Dept. of Rev.*, 302 Or 128, 132, 727 P2d 614 (1986). However, plaintiffs go on to argue that the converse of that proposition also is true; *i.e.*, they

assert that a law that provides a privilege or immunity to a "fixed" or "closed" class *must* be invalid.

This court's decisions in *Sealey*, *Hale*, and *Greist* all demonstrate that that assertion is incorrect. The statutes at issue in those cases all involved classes that were "closed"; that is, the persons allegedly disfavored by the statutes at issue could not "bring themselves within" the classes of persons who were favored. In *Hale*, for example, victims of governmental torts whose damages were limited under the OTCA could not alter the identity of the alleged tortfeasor to evade that limitation. 308 Or at 524-25. Similarly, in *Sealey*, persons injured in products liability actions could not alter the sources or timing of their injuries to avoid the applicable statute of repose, ORS 30.905. *Sealey*, 309 Or at 397-98. Yet, neither statutory scheme violated Article I, section 20.

A moment's reflection illustrates that the foregoing refutation of plaintiff's theory must be correct. Were it not, plaintiffs' theory would mean that the legislature would be precluded from enacting a law benefitting, for example, Vietnam veterans or Gulf War veterans, both closed classes. Here, the postowners' inability to "bring themselves within" the class of preowners does not render Measure 37 invalid. We conclude that Measure 37 does not offend Article I, section 20, as plaintiffs contend.

### 3.   *Impermissible Suspension of the Laws*

Article I, section 22, of the Oregon Constitution provides that "[t]he operation of the laws shall never be suspended, *except by the Authority of the Legislative Assembly*." (Emphasis added.) The trial court accepted plaintiffs' view that Measure 37 had the effect of suspending land use regulations, but only for certain property owners—that is, those who acquired their property before the land use regulations in question had become effective. As already explained, the trial court then held that "suspending" the laws in that manner violated Article I, section 20. In the trial court's view, Measure 37 therefore also violated Article I, section 22, because the suspension clause set out in that constitutional provision "must not [be used] to provide a privilege or immunity that is not available to all."

According to defendants, the trial court's conclusion is wrong in two respects. First, they argue that Measure 37 does not constitute a "suspension of laws"; second, they argue that, even if Measure 37 did effect a "suspension of laws," Article I, section 22, does not operate as a limit on the legislature. In response, plaintiffs echo the trial court's conclusion that, by allowing only certain property owners to avoid land use regulations, Measure 37 effects only a limited suspension of the land use regulations. And, because Article I, section 22, authorizes only general suspensions of the laws, plaintiffs argue, it follows that Measure 37 is unconstitutional. As described below, we disagree with plaintiffs and conclude that Article I, section 22, does not operate to invalidate Measure 37.

We first address the wording of the suspension clause of Article I, section 22, which has remained unchanged since the adoption of the Oregon Constitution in 1859. *See* Charles Henry Carey, *The Oregon Constitution and Proceeding and Debates of the Constitutional Convention of 1857* 403 (1926) (citing original constitution). A nineteenth-century dictionary defines "suspend," for our purposes here, as "to interrupt; to intermit; to cause to cease for time"; "to stay, to delay; to hinder from proceeding for a time"; or "to cause to cease for a time from operation or effect." Noah Webster, 1 *An American Dictionary of the English Language*, s.v. "suspend" (Johnson 1828); *see also Rico-Villalobos v. Giusto*, 339 Or 197, 206, 118 P3d 246 (2005) (when analyzing terms in original Oregon Constitution, court examines meanings of terms as framers would have understood them). Applying those definitions, it is clear that Measure 37 does not "cause to cease for a time," "delay," or "interrupt" any land use regulation. Instead, it authorizes a governing body to "modify, remove, or not * * * apply" certain such regulations in specific situations. The measure is, in effect, an amendment of the land use regulations in those particulars. No law is "suspended"; all laws not amended remain in effect.

Nothing in the history of the adoption of Article I, section 22,[9] or this court's case law contradicts the foregoing

_____

[9] As the parties acknowledge, Article I, section 22, was not the subject of any reported debate during Oregon's constitutional convention. Claudia Burton and

reading of the text of that provision.[10] *See Priest v. Pearce*, 314 Or 411, 414-15, 840 P2d 65 (1992) (describing methodology for analyzing constitutional provision). The trial court's conclusion that Measure 37 unconstitutionally suspended land use regulations was error.

### 4. *Violation of Separation of Powers Principles*

■    Article III, section 1, of the Oregon Constitution provides:

> "The powers of the Government shall be divided into three seperate (*sic*) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

The trial court held that Measure 37 violated Article III, section 1, to the extent that the measure

> "purports to permit the legislature to delegate to public entities a limit on the legislature's plenary power, the authority to treat a class of property owners * * * differently from other property owners * * *, and the suspension of land use regulations for a specified group of property owners."

As stated, the trial court's separation of powers holding explicitly relied on its earlier conclusions that Measure 37 impermissibly intruded on the legislature's plenary power, violated Article I, section 20, and violated Article I, section 22. We already have concluded that Measure 37 does none of those things. It follows that the trial court's stated reasons for holding that Measure 37 violated Article III, section 1, were also incorrect.

---

Andrew Grade, *A Legislative History of the Oregon Constitution - Part I (Article I & II)*, 37 Willamette L Rev 469, 539-40 (2001).

[10] In *Holden v. James*, 11 Mass 396, 403-05 (1814)—a case that plaintiffs cite here—the Massachusetts Supreme Court explained that state constitutional "suspension of laws" clauses sought to correct abuses of regal authority and were rooted in the Magna Charta and the English Bill of Rights of 1689. *Id.* The English Bill of Rights enumerated "the oppressive acts of James 2," the first of which was "the assuming and exercising [of] a power of dispensing with and suspending the laws, * * * without consent of parliament." *Id.* at 404. The first article of the Bill of Rights provided that "the exercise of such power, by regal authority, without consent of Parliament, is illegal." *Id.*

Plaintiffs, however, raise two additional separation of powers arguments in support of the trial court's ruling. Specifically, plaintiffs contend that Measure 37 violates Article III, section 1, because it (1) intrudes on the executive power; and (2) fails to provide adequate safeguards to prevent improper use of the power conferred.

Because the roles of governmental actors frequently overlap, this court has held that the separation of powers doctrine does not require an "absolute separation between the departments of government." *Rooney v. Kulongoski*, 322 Or 15, 28, 902 P2d 1143 (1995). Instead, a separation of powers analysis under the Oregon Constitution involves two inquiries: (1) whether one department of government has "unduly burdened" the actions of another department where the constitution has committed the responsibility for the governmental activity in question to that latter department; and (2) whether one department has performed functions that the constitution commits to another department. *Id.* (citations omitted).

Plaintiffs focus on the second inquiry. Measure 37 provides that "the governing body responsible for enacting the land use regulation may modify, remove or not * * * apply" that land use regulation. ORS 197.352(8). Plaintiffs contend that, in so providing, Measure 37 improperly allows legislative bodies, rather than the executive, to determine whether and when to enforce a general law. Specifically, plaintiffs appear to argue that, because "enacting" a land use regulation is a legislative function, the "governing body" deciding whether to modify, remove, or not apply a particular regulation cannot be the same body that enacted the legislation. Plaintiffs' argument, however, rests upon two assumptions: (1) the "governing body" referred to in the measure can be only a legislative body; and (2) the decision to pay compensation or to modify, remove, or not apply a land use regulation can be only an executive function. As explained below, plaintiffs' assumptions do not support the type of separation of powers violation required for plaintiffs' argument to succeed.

As noted, Measure 37 directs "the *governing body* responsible for enacting the land use regulation" in question

to decide whether to pay compensation to property owners who acquired their property prior to the enactment of that regulation or to "modify, remove or not * * * apply" that regulation. ORS 197.352(8) (emphasis added). That provision does not concentrate executive power in the legislative branch. Indeed, if the "governing body" in question is a state agency that is itself part of the executive branch, then Measure 37 removes no executive function from the executive branch and devolves none on its legislative counterpart.

The flaw in plaintiffs' argument becomes even more clear when the "governing bodies" in question are composed of local city or county officials. Such bodies are not solely legislative, executive, or judicial. As this court has explained,

"members [of local general-purpose governing bodies] are politically elected to positions that do not separate legislative from executive and judicial power on the state or federal model; characteristically they combine lawmaking with administration that is sometimes executive and sometimes adjudicative."

*1000 Friends of Oregon v. Wasco Co. Court*, 304 Or 76, 82, 742 P2d 39 (1987); *see also Fasano v. Washington Co. Comm.*, 264 Or 574, 580, 507 P2d 23 (1973) ("Local and small decision groups are simply not the equivalent in all respects of state and national legislatures."). Plaintiffs' argument fails to undermine the constitutional permissibility of the "combined functions" performed by local government bodies. In our view, plaintiffs have not demonstrated—as they must to prevail on their separation of power argument—that Measure 37 improperly delegates executive power to legislative bodies.

Plaintiffs also assert that Measure 37 delegates legislative authority without providing adequate safeguards against "arbitrary and deleterious exercise of the power" so delegated. We continue to take the following view, first expressed by this court nearly a half century ago: "There is no constitutional requirement that all delegation of legislative power must be accompanied by a statement of standards circumscribing its exercise." *Warren v. Marion County*, 222 Or 307, 313, 353 P2d 257 (1960). Rather, the procedure established for the exercise of that power must furnish adequate

safeguards against the arbitrary exercise of the delegated power. *Id.* at 314. Measure 37 does just that. The measure provides a cause of action for claimants seeking compensation. ORS 197.352(6). Further, avenues exist for both claimants and interested third parties, such as plaintiffs, to obtain judicial review of the decisions that local governing bodies make in accordance with the measure. Those avenues provide adequate safeguards against the arbitrary exercise of power, as *Warren* requires. We therefore hold that Measure 37 does not violate the separation of powers principles encompassed in Article III, section 1.

### 5. *Impermissible Waiver of Sovereign Immunity*

■ Article IV, section 24, of the Oregon Constitution authorizes the state to waive its sovereign immunity, as follows:

> "Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing (*sic*) such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

Plaintiffs contend that ORS 197.352(6) impermissibly waives sovereign immunity. That section authorizes a Measure 37 claimant to bring an action for compensation, including reasonable attorney fees, expenses, and costs, if a challenged land use regulation continues to apply to the subject property more than 180 days after the claimant filed a written Measure 37 claim. ORS 197.352(6).[11] Plaintiffs assert that Article IV, section 24, does not extend to liabilities for economic consequences of regulation. As explained below, we disagree.

---

[11] ORS 197.352(6) provides:

"If a land use regulation continues to apply to the subject property more than 180 days after the present owner of the property had made written demand for compensation under this section, the present owner of the property, or any interest therein, shall have a cause of action for compensation under this section in the circuit court in which the real property is located, and the present owner of the real property shall be entitled to reasonable attorney fees, expenses, costs, and other disbursements reasonably incurred to collect the compensation."

Article IV, section 24, allows the state to waive immunity "as to *all* liabilities originating after, or existing at the time of the adoption of this Constitution." Or Const, Art IV, § 24 (emphasis added). That section neither creates nor limits sovereign immunity. As this court discussed in *Hale*, Article XVIII, section 7, of the Oregon Constitution incorporated sovereign immunity from the Oregon Territory's preexisting law. *Hale*, 308 Or at 514-15; *see also* Or Const, Art XVIII, § 7 (declaring that territorial laws continued through adoption of Oregon Constitution). "Sovereign immunity originated in the rule that the English King could not be sued in his own courts." *Hale*, 308 Or at 513. Article IV, section 24, in turn, allocates the power to waive sovereign immunity, within specified limits, to the legislature. *Id.* at 516.

Plaintiffs contend that neither the Legislative Assembly nor the people exercising their initiative power are permitted to waive sovereign immunity simply to "subject the state to suit for purely consequential economic harm caused by past or prospective regulation." However, plaintiffs point to nothing in Article IV, section 24, itself, or in case law interpreting that section, that so limits the legislative authority.[12]

Nothing in Article IV, section 24, or, so far as we are aware, in any other state constitutional provision, forbids the state from deciding that it will compensate property owners for the economic consequences of the state's land use regulations, including waiving the state's sovereign immunity to

---

[12] Instead, plaintiffs cite cases that note, generally, that states are not obligated to compensate for losses sustained by virtue of the exercise of governmental power. *See*, *e.g.*, *Branson v. City of Philadelphia*, 47 Pa 329 (1864) ("no obligation at law requires [the Commonwealth] to repair the mere consequences collaterally falling upon those who suffer from the exercise of a great reserved power of acting for the general good"); *The Western College of Homeopathic Medicine v. City of Cleveland*, 12 Ohio St 375, 377-78 (1861) ("It is not the policy of governments to indemnify individuals for losses sustained, either from the want of proper laws, or from the inadequate enforcement of laws made to secure the property of individuals."). But, even assuming that the state is not *obligated* to compensate for economic losses stemming from regulation, it does not follow that the state is *forbidden* from doing so.

permit those owners to assert their claims in court. We conclude that Article IV, section 24, does not bar Oregon's legislative bodies from waiving immunity as the people have chosen to do in enacting Measure 37.[13]

## B. *United State Constitution: Due Process Clause*

■         Having rejected all plaintiffs' state constitutional arguments, we turn to plaintiffs' arguments based on the United States Constitution. Plaintiffs' federal constitutional arguments are limited to the Fourteenth Amendment's Due Process Clause.[14] Plaintiffs' due process claim raises both the procedural and substantive components of due process.

As to the procedural component, the trial court held that Measure 37 violated the procedural due process rights of affected nonclaimant property owners because the measure failed to provide predeprivation procedures for those property owners to challenge governmental actions that adversely would affect their property interests. The trial court held that, because nearby property owners may suffer "irreparable harm" as a result of a governmental decision to modify, remove, or not apply a land use regulation, property owners so affected "must be given notice and an opportunity to be heard *before* a public entity decides the Measure 37 claim."[15] (Emphasis in original.)

In so ruling, the trial court asked more of Measure 37 than the measure was required to deliver. While it is true

---

[13] To the extent that plaintiffs also argue that Measure 37 unconstitutionally waives sovereign immunity because the measure impermissibly limits the plenary legislative power, we reject that argument as well, for the reasons stated in our discussion of plenary legislative power.

[14] The Due Process Clause of the Fourteenth Amendment provides:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law[.]"

Plaintiffs' brief on appeal mentions two other federal constitutional provisions—the Due Process Clause of the Fifth Amendment and the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs raised neither claim in their complaint or their motion for summary judgment below, however, and neither theory is well developed in their brief to this court. We therefore limit our discussion to plaintiffs' Fourteenth Amendment Due Process Clause arguments.

[15] The trial court's holding appears to have been, in part, specific to the procedures utilized in deciding the claim of plaintiff Adams's neighbor. Those facts might have been relevant if plaintiffs had asserted an "as applied" challenge to Measure 37, but they are irrelevant to plaintiffs' facial challenge to Measure 37.

that Measure 37 does not expressly provide the predeprivation procedures that the trial court outlined, it does not follow that that omission renders Measure 37 unconstitutional under the Fourteenth Amendment. The foregoing is true because, at least for purposes of this case, plaintiffs are asserting only a facial challenge to Measure 37. Plaintiffs therefore must demonstrate that Measure 37 affirmatively permits the government to deprive plaintiffs of their property without affording procedural due process. *See United States v. Salerno*, 481 US 739, 745, 107 S Ct 2095, 95 L Ed 2d 697 (1987) (plaintiffs asserting facial challenge bear "heavy burden" to demonstrate that statute cannot be constitutionally applied under any circumstance).

Nothing in Measure 37 denies predeprivation procedures to individuals such as plaintiffs who may wish to challenge particular governmental actions that may harm individual property interests. Neither does Measure 37 preclude responsible governmental entities from implementing such predeprivation procedures. To the contrary, Measure 37 contemplates that a "metropolitan service district, city, or county, or state agency may adopt or apply procedures for the processing of claims under this act[.]" ORS 197.352(7). And, as the trial court noted, for claims that a state entity must decide, the state has adopted rules that provide for notice and an opportunity to be heard to affected third parties. *See* OAR 125-145-0080 (outlining procedures). Plaintiffs do not contend that those procedures are insufficient or that similar procedures adopted by local officials would be insufficient. Therefore, even assuming that predeprivation procedures are constitutionally required for Measure 37 claims in the manner that plaintiffs contend—an issue that we do not decide here—many circumstances exist in which applying the statute would not violate the constitution. *See Salerno*, 481 US at 745 (to succeed in a facial challenge under Due Process Clause, "the challenger must establish that no set of circumstances exists under which [the statute] would be valid"). We therefore conclude that Measure 37, on its face, does not violate plaintiffs' procedural due process rights.

The trial court also concluded that Measure 37 violated the substantive component of the Fourteenth Amendment's Due Process Clause. The trial court explained that,

although the measure did not implicate a fundamental right, "the government, through the initiative process, *could not* have had a legitimate reason for enacting Measure 37, because, as described earlier, the compensation provision of Measure 37 impedes the exercise of the plenary power." (Emphasis in original.) On appeal, plaintiffs argue that the trial court correctly held that Measure 37 was unable to withstand rational basis review, *i.e.*, that the measure was not reasonably related to a legitimate state interest.

The trial court's express reasons for declaring that Measure 37 offends principles of substantive due process were erroneous, because, as we already have explained, the premises on which that court relied were themselves incorrect. Plaintiffs, however, offer an additional rationale for the trial court's ruling that that court did not address. Plaintiffs assert that compensating persons who suffer economic loss due to governmental regulation furthers "private interests," which is not a legitimate state interest. We address that argument below.

As was true respecting their waiver-of-sovereign-immunity arguments, plaintiffs assert in this argument that, before the enactment of Measure 37, no law required governments to offer such compensation. Plaintiffs reason from that fact that it would be "manifestly destructive" to society to burden the public with compensating individuals when the government has enacted land use regulations for the public good. Additionally, according to plaintiffs, Measure 37 allows claimants to demand payment for the economic impact of a regulatory scheme that did not rise to the level of a taking under the Fifth Amendment to the United States Constitution; such an allowance would be "reverse extortion," according to plaintiffs.

We find none of those arguments persuasive. When a statute does not implicate a fundamental right,[16] a party challenging that statute on substantive due process grounds must show that the statute bears no reasonable relation to a legitimate state interest. *See Washington v. Glucksberg*, 521 US 702, 722, 117 S Ct 2258, 138 L Ed 2d 772 (1997) (stating principle). Plaintiffs cannot meet that burden. Although it is

---

[16] The trial court concluded that Measure 37 did not implicate plaintiffs' fundamental rights, and the parties do not contest that conclusion.

true that neither the state nor the federal constitution *requires* compensation to individuals who suffer any loss in property value as a consequence of land use regulation, *Pennsylvania Coal Co. v. Mahon*, 260 US 393, 413, 43 S Ct 158, 67 L Ed 322 (1922); *Kroner v. City of Portland*, 116 Or 141, 152, 240 P 536 (1925), it is equally true that neither constitution *forbids* requiring such compensation in the manner provided for in Measure 37. The people, in exercising their initiative power, were free to enact Measure 37 in furtherance of policy objectives such as compensating landowners for a diminution in property value resulting from certain land use regulations or otherwise relieving landowners from some of the financial burden of certain land use regulations. Neither policy is irrational; no one seriously can assert that Measure 37 is not reasonably related to those policy objectives.

And, that determination is the only one that this court is empowered to make. Whether Measure 37 as a policy choice is wise or foolish, farsighted or blind, is beyond this court's purview. Our only function in any case involving a constitutional challenge to an initiative measure is to ensure that the measure does not contravene any pertinent, applicable constitutional provisions. Here, we conclude that no such provisions have been contravened.

## IV. CONCLUSION

In sum, we conclude that (1) plaintiffs' claims are justiciable; (2) Measure 37 does not impede the legislative plenary power; (3) Measure 37 does not violate the equal privileges and immunities guarantee of Article I, section 20, of the Oregon Constitution; (4) Measure 37 does not violate the suspension of laws provision contained in Article I, section 22, of the Oregon Constitution; (5) Measure 37 does not violate separation of powers constraints; (6) Measure 37 does not waive impermissibly sovereign immunity; and (7) Measure 37 does not violate the Fourteenth Amendment to the United States Constitution. The trial court's contrary conclusions under the state and federal constitutions were erroneous and must be reversed.

The judgment of the circuit court is reversed, and the case is remanded for entry of judgment in favor of defendants and intervenors.

## APPENDIX

Measure 37, codified at ORS 197.352, provides:

"The following provisions are added to and made a part of ORS chapter 197:

"(1)    If a public entity enacts or enforces a new land use regulation or enforces a land use regulation enacted prior to the effective date of this amendment that restricts the use of private real property or any interest therein and has the effect of reducing the fair market value of the property, or any interest therein, then the owner of the property shall be paid just compensation.

"(2)    Just compensation shall be equal to the reduction in the fair market value of the affected property interest resulting from enactment or enforcement of the land use regulation as of the date the owner makes written demand for compensation under this act.

"(3)    Subsection (1) of this act shall not apply to land use regulations:

"(A)    Restricting or prohibiting activities commonly and historically recognized as public nuisances under common law. This subsection shall be construed narrowly in favor of a finding of compensation under this act;

"(B)    Restricting or prohibiting activities for the protection of public health and safety, such as fire and building codes, health and sanitation regulations, solid or hazardous waste regulations, and pollution control regulations;

"(C)    To the extent the land use regulation is required to comply with federal law;

"(D)    Restricting or prohibiting the use of a property for the purpose of selling pornography or performing nude dancing. Nothing in this subsection, however, is intended to affect or alter rights provided by the Oregon or United States Constitutions; or

"(E)    Enacted prior to the date of acquisition of the property by the owner or a family member of the owner who owned the subject property prior to acquisition or inheritance by the owner, whichever occurred first.

"(4)    Just compensation under subsection (1) of this act shall be due the owner of the property if the land use

regulation continues to be enforced against the property 180 days after the owner of the property makes written demand for compensation under this section to the public entity enacting or enforcing the land use regulation.

"(5)    For claims arising from land use regulations enacted prior to the effective date of this act, written demand for compensation under subsection (4) shall be made within two years of the effective date of this act, or the date the public entity applies the land use regulation as an approval criteria to an application submitted by the owner of the property, whichever is later. For claims arising from land use regulations enacted after the effective date of this act, written demand for compensation under subsection (4) shall be made within two years of the enactment of the land use regulation, or the date the owner of the property submits a land use application in which the land use regulation is an approval criteria, whichever is later.

"(6)    If a land use regulation continues to apply to the subject property more than 180 days after the present owner of the property has made written demand for compensation under this act, the present owner of the property, or any interest therein, shall have a cause of action for compensation under this act in the circuit court in which the real property is located, and the present owner of the real property shall be entitled to reasonable attorney fees, expenses, costs, and other disbursements reasonably incurred to collect the compensation.

"(7)    A metropolitan service district, city, or county, or state agency may adopt or apply procedures for the processing of claims under this act, but in no event shall these procedures act as a prerequisite to the filing of a compensation claim under subsection (6) of this act, nor shall the failure of an owner of property to file an application for a land use permit with the local government serve as grounds for dismissal, abatement, or delay of a compensation claim under subsection (6) of this act.

"(8)    Notwithstanding any other state statute or the availability of funds under subsection (10) of this act, in lieu of payment of just compensation under this act, the governing body responsible for enacting the land use regulation may modify, remove, or not to [sic] apply the land use regulation or land use regulations to allow the owner to use the

property for a use permitted at the time the owner acquired the property.

"(9)   A decision by a governing body under this act shall not be considered a land use decision as defined in ORS 197.015(10).

"(10)   Claims made under this section shall be paid from funds, if any, specifically allocated by the legislature, city, county, or metropolitan service district for payment of claims under this act. Notwithstanding the availability of funds under this subsection, a metropolitan service district, city, county, or state agency shall have discretion to use available funds to pay claims or to modify, remove, or not apply a land use regulation or land use regulations pursuant to subsection (6) of this act. If a claim has not been paid within two years from the date on which it accrues, the owner shall be allowed to use the property as permitted at the time the owner acquired the property.

"(11)   Definitions - for purposes of this section:

"(A)   'Family member' shall include the wife, husband, son, daughter, mother, father, brother, brother-in-law, sister, sister-in-law, son-in-law, daughter-in-law, mother-in-law, father-in-law, aunt, uncle, niece, nephew, stepparent, stepchild, grandparent, or grandchild of the owner of the property, an estate of any of the foregoing family members, or a legal entity owned by any one or combination of these family members or the owner of the property.

"(B)   'Land use regulation' shall include:

"(i)   Any statute regulating the use of land or any interest therein;

"(ii)   Administrative rules and goals of the Land Conservation and Development Commission;

"(iii)   Local government comprehensive plans, zoning ordinances, land division ordinances, and transportation ordinances;

"(iv)   Metropolitan service district regional framework plans, functional plans, planning goals and objectives; and

"(v)   Statutes and administrative rules regulating farming and forest practices.

"(C)    'Owner' is the present owner of the property, or any interest therein.

"(D)    'Public entity' shall include the state, a metropolitan service district, a city, or a county.

"(12)    The remedy created by this act is in addition to any other remedy under the Oregon or United States Constitutions, and is not intended to modify or replace any other remedy.

"(13)    If any portion or portions of this act are declared invalid by a court of competent jurisdiction, the remaining portions of this act shall remain in full force and effect."