Argued and submitted May 7, peremptory writ of mandamus to issue
July 19, 2007

# STATE OF OREGON,
*Plaintiff-Relator,*

*v.*

# CHRISTOPHER LEE ORUETA,
*Defendant-Adverse Party.*

## (CC MI062338; SC S54314)

164 P3d 267

Paul L. Smith, Assistant Attorney General, Salem, argued the cause and filed the briefs for plaintiff-relator. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance by defendant-adverse party.

Andy Simrin, Salem, argued the cause and filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association.

KISTLER, J.

Walters, J., dissented and filed an opinion.

## KISTLER, J.

In this mandamus proceeding, the state contends that the trial court erred in allowing defendant to enter into a diversion agreement. Because defendant drove under the influence of intoxicants while he had a commercial driver's license, we agree with the state that he is not eligible for diversion. *See* ORS 813.215(7) (stating that limitation on diversion). The trial court erred in ruling otherwise, and we conclude that a peremptory writ should issue.

Before setting out the facts, we first describe briefly the statutory and regulatory framework that underlies the parties' claims. Under ORS 807.031 and ORS 807.100, a person must have both a commercial driver's license and a current medical certificate to operate a commercial motor vehicle. A person also must have a medical certificate to obtain or renew a commercial driver's license. *See* ORS 807.040(1)(g) (new commercial driver's license); ORS 807.150(2) (renewing commercial driver's license). As explained below, the applicable rules require a person applying for a new commercial driver's license to present a medical certificate as part of the application. OAR 735-074-0290(1). However, a person seeking to renew an existing commercial driver's license only has to certify that he or she still has a current medical certificate. OAR 735-074-0290(3).

With that background in mind, we turn to the facts of this case. In March 2004, defendant went into the cement mixing business, which required that he drive a cement mixing truck. Defendant applied for a commercial driver's license from the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV). As part of the application process for that license, defendant submitted a current medical certificate to DMV, which issued a commercial driver's license to defendant. In December 2005, defendant sold his business and got a new job that did not require him to operate a commercial vehicle.

On September 1, 2006, defendant renewed his driver's license. He did not intend to renew his commercial driver's license but intended instead to get an ordinary Class C driver's license. Defendant did not communicate that

intention to DMV, however. DMV, for its part, did not ask defendant which type of license he wanted to renew. Rather, DMV, following its usual practice, provided defendant with an application to renew the same type of license that he had—a commercial driver's license. The application stated below the signature line "commercial driver's license." The application also stated that, "if renewing a commercial driver's license used in interstate operations, I certify that I meet all requirements contained in the federal regulations," one of which was possession of a current medical certificate. Consistently with its rules, DMV did not require defendant to submit a current medical certificate when he renewed his license. Rather, the certification on the renewal application sufficed.

Defendant signed the renewal application and paid the fee for renewing a commercial driver's license. That fee was higher than the fee for renewing an ordinary Class C driver's license. *See* ORS 807.370(14), (15) (setting out fees for renewing those types of driver's licenses). DMV then renewed defendant's commercial driver's license. Less than a month later, defendant drove under the influence of intoxicants while holding a commercial driver's license.

The state charged defendant with driving under the influence of intoxicants, and defendant petitioned to enter into a diversion agreement. In essence, a diversion agreement allows first-time offenders charged with driving under the influence of intoxicants to have that charge dismissed if they successfully complete certain programs. *See* ORS 813.200 to 813.270 (describing diversion). The state objected, arguing that defendant was not eligible for diversion because he had a commercial driver's license at the time of the offense. *See* ORS 813.215(7) (imposing that restriction on diversion). Relying on a ruling that the trial court had made in another case, defendant responded that ORS 813.215(7) did not apply because he had no intent to drive a commercial motor vehicle.

After considering the evidence, the trial court ruled that, if defendant had been using his commercial driver's license or had intended to use it, he would not be eligible for diversion. The court found, however, that defendant "didn't

intend to renew [his commercial driver's license], didn't know that he renewed it, hadn't been exercising it, doesn't intend to exercise it, and I think [his renewing it] was simply an oversight." It followed, the court concluded, that defendant was not one of "the people that [ORS 813.215(7)] was intended to reach."

The state petitioned for a writ of mandamus, and this court issued an alternative writ directing the trial court either to vacate its order or to show cause for not doing so. The trial court declined to vacate its order and instead issued a supplemental opinion explaining its earlier ruling. In the supplemental opinion, the court restated the reasons that it had articulated at the hearing. The court also noted an additional reason for its ruling. Relying on OAR 735-074-0290(1), which governs applications for an "original * * * commercial permit or driver['s] license," the court reasoned that DMV had no authority to renew defendant's commercial license because defendant had not presented a medical certificate to DMV. This court set the case for argument. The state filed a brief, but defendant did not. The Oregon Criminal Defense Lawyers Association (OCDLA), however, has appeared as *amicus curiae* and advanced various arguments for upholding the trial court's ruling. For the reasons set out below, we conclude that the trial court had no authority to allow defendant to enter into a diversion agreement.

■ We begin with the text of ORS 813.215(7). That statute provides that a defendant is eligible for diversion if, among other things, "[t]he defendant did not have a commercial driver['s] license at the time of the offense." Because defendant had a commercial driver's license at the time of the offense, ORS 813.215(7) bars him from entering into a diversion agreement. We are not free to craft exceptions to that rule; that is, we may not say that a person is disqualified from diversion only if he or she intended to have or use a commercial driver's license, as the trial court reasoned. The legislature did not require proof of those facts, and we may not insert into ORS 813.215(7) what the legislature has omitted. *See US West Communications v. City of Eugene*, 336 Or 181, 188, 81 P3d 702 (2003) (stating proposition).[1]

---

[1] The question that ORS 813.215(7) asks is whether defendant had a commercial driver's license, not whether he intended to use it. Neither the trial court nor

Perhaps recognizing that problem, OCDLA does not argue that defendant's eligibility for diversion turns on his intent (or lack of it) to hold or use a commercial driver's license. Rather, it advances other arguments in support of the trial court's ruling. OCDLA argues initially that, as a matter of statute, ORS 813.215(7) does not bar defendant from diversion because defendant did not have a commercial driver's license at the time of the offense. OCDLA's argument runs as follows: ORS 801.207 defines a commercial driver's license as a "driver['s] license * * * that authorizes its holder to drive a commercial motor vehicle." ORS 807.100 provides that a person who holds a commercial driver's license may operate a commercial motor vehicle "only when a medical certificate approved by the Department of Transportation [and issued within the past two years] is in the licensee's immediate possession." OCDLA concludes that, because defendant did not have the required medical certificate when he drove under the influence of intoxicants, the license that defendant held did not authorize him to drive a commercial motor vehicle and, thus, under ORS 801.207, was not a commercial driver's license.

OCDLA's argument fails to distinguish two related but separate statutory requirements. A commercial driver's license is a necessary but not sufficient prerequisite for driving a commercial motor vehicle. ORS 807.031(1) - (3). In addition to holding a commercial driver's license, a person also must have a medical certificate in the person's immediate possession in order to drive a commercial motor vehicle. ORS 807.100. The fact that a person may not have a medical certificate in his or her immediate possession does not mean he or she does not hold a commercial driver's license. Put differently, the "license [that defendant held] authorize[d him] to drive a commercial motor vehicle," *see* ORS 801.207 (defining commercial driver's license), even though the fact that he did not possess a medical certificate disabled him from exercising the authority that the license granted.[2]

---

we are free to overlook the policy choice that those words express in order to advance what the trial court perceived was the better policy.

[2] OCDLA's contrary interpretation of ORS 801.207 overlooks the subject of the verb "authorizes" in that statute. ORS 801.207 defines a commercial driver's license as a "driver['s] license issued by this state or any other jurisdiction that

OCDLA advances what appears to be a separate argument. It contends that, when defendant applied to renew his license, DMV erroneously issued him a commercial driver's license without proof that he possessed a current medical certificate. Had DMV asked to see a medical certificate, which defendant did not have, it would not have issued him a commercial driver's license. Rather, it would have issued him an ordinary Class C driver's license, and he would have been eligible for diversion when he later drove under the influence of intoxicants. OCDLA observes that "defendant, through no fault of his own, is paying the price for DMV's failure to comply with its statutory mandate and its own rules."

We begin by examining the premise of OCDLA's argument. ORS 807.040(1)(g) provides that, in applying for an original commercial driver's license,

"the person must submit to the department, in a form approved by the department, the report of a medical examination that establishes, to the satisfaction of the department, that the person meets the medical requirements for the particular class of license."

That requirement applies equally to persons seeking to renew an existing commercial driver's license. *See* ORS 807.150(2) (stating that, "[t]o qualify for renewal of a license under this section, a person must meet all of the requirements under ORS 807.040 for the class of license sought to be renewed").

OAR 735-074-0290 implements ORS 807.040(1)(g). It provides that an applicant for an original commercial driver's license must submit a current medical certificate to DMV. OAR 735-074-0290(1).[3] The rule does not impose the

___

authorizes its holder to drive a commercial motor vehicle * * *." The question under that statute is whether defendant held *the license* that ORS 801.207 defines. He did, even though he lacked another statutory prerequisite (a medical certificate) for driving a commercial motor vehicle.

[3] OAR 735-074-0290(1) provides, in part:

"DMV will issue a Class A, B, or C commercial driver['s] permit or license only to applicants who present an approved medical certificate when applying for an *original* Class A, B, or C commercial permit or driver['s] license."

(Emphasis added.)

same requirement on a person who applies to renew an existing commercial driver's license. OAR 735-074-0290(3). Under that rule, it is sufficient if a person who applies to renew a commercial driver's license "certif[ies] on the renewal application that he or she meets all of the driver qualification requirements as required by [49 CFR § 383.71]." *Id.* One of those requirements is that the applicant possess a current medical certificate showing that he or she is physically qualified to drive a commercial motor vehicle. *See* 49 CFR § 383.71 (imposing that requirement).[4]

DMV complied with the terms of its rule when it renewed defendant's commercial driver's license. Defendant signed an application to renew a commercial driver's license, and the application stated that, if renewing a commercial driver's license, the applicant certified that he complied with the applicable federal regulations. Because defendant certified that he met those regulations, one of which was that he possessed a current medical certificate, DMV's rules authorized it to renew the commercial driver's license for which defendant apparently had applied.[5]

We recognize that there may be some question whether an applicant's certification that he or she possesses a medical certificate stating that the applicant is physically qualified to drive a commercial motor vehicle constitutes a "report of a medical examination" within the meaning of ORS 807.040(1)(g). We need not resolve that question, however, to decide this case. Even if ORS 807.040(1)(g) requires applicants to present a medical certificate to DMV when they

---

[4] 49 CFR § 383.71(c)(1) requires an applicant seeking to renew a commercial license to "[p]rovide certification contained in Sec. 383.71(a)(1)." 49 CFR § 383.71(a)(1), in turn, requires an applicant to certify "that he/she meets the qualification requirements contained in part 391 of this title." Part 391 of title 49 requires, among other things, that a person must have a "medical examiner's certificate that he/she is physically qualified to drive a commercial motor vehicle." 49 CFR § 391.41(a).

[5] We accept, as the trial court found, that defendant did not intend to renew his commercial driver's license and did not understand that he was certifying that he had a current medical certificate. But OCDLA has identified no basis to say that, given the application to renew a commercial driver's license that defendant signed, DMV failed to comply with OAR 735-074-0290(3) when it renewed his commercial driver's license.

apply to renew their commercial driver's licenses, the question in this case is not whether DMV erred in renewing defendant's commercial driver's license without first asking to see a current medical certificate or whether defendant erred in not noticing that he was applying for a license that, according to the trial court's findings, he never sought. Rather, the question under ORS 813.215(7) is whether defendant "ha[d] a commercial driver['s] license at the time of the offense." He did. And, unless we disregard the terms of that statute, which we may not do, a defendant with that status is not eligible for diversion under ORS 813.215(7).[6]

■      OCDLA argues that, if ORS 813.215(7) disqualifies defendant from diversion, that statute violates Article I, section 20, of the Oregon Constitution and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[7] We begin with OCDLA's claim under Article I, section 20. *See State v. Kennedy*, 295 Or 260, 264-65, 666 P2d 1316 (1983) (addressing state constitutional claims first). This court explained in *State v. Clark*, 291 Or 231, 237, 630 P2d 810 (1981), that

> "[Article I, section 20,] forbids inequality of privileges or immunities not available 'upon the same terms,' first, to any citizen, and second, to any class of citizens. In other words, it may be invoked by an individual who demands equality of treatment with other individuals as well as by one who demands equal privileges or immunities for a class to which he or she belongs."

---

[6] The dissent notes that, in other contexts, this court has held that a license or permit issued in excess of an agency's statutory authority was void *ab initio*. The legislature, however, has not provided in this context that any irregularity in issuing a license renders it void without further process. Rather, the legislature has provided that DMV "may cancel any driving privileges upon determining that the person is not entitled to the driving privileges under the vehicle code," and the legislature has provided a process for the agency to follow if it wishes to cancel such a license. *See* ORS 809.310(1) (authorizing cancellation); ORS 809.430 (requiring notice); ORS 809.440 (providing for hearings). DMV did not seek to cancel defendant's license, and defendant had a commercial driver's license when he drove under the influence.

[7] OCDLA also asserts that ORS 813.215(7) violates the Due Process Clause of the Fourteenth Amendment. OCDLA's argument under that clause, however, is essentially the same as its argument under the Equal Protection Clause. We therefore treat the two claims as one.

In this case, OCDLA contends that ORS 813.215(7) impermissibly distinguishes between two statutorily defined classes of persons. It denies persons who have commercial driver's licenses the opportunity of participating in diversion—an opportunity that it grants to persons who do not have commercial driver's licenses.

The difficulty with OCDLA's argument is that the class it describes, persons who do not have commercial driver's licenses, does not exist independently of the statutes relating to that class. As this court has explained, those classes are entitled to no protection under Article I, section 20. *See, e.g., MacPherson v. DAS*, 340 Or 117, 129-30, 130 P3d 308 (2006) (recognizing that proposition). OCDLA's Article I, section 20, argument thus fails.

■ ■ OCDLA's federal equal protection challenge also fails. A classification that "neither burdens a fundamental right nor targets a suspect class" will satisfy the Equal Protection Clause "so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 US 620, 631, 116 S Ct 1620, 134 L Ed 2d 855 (1996). OCDLA does not argue that the class of persons who hold commercial driver's licenses is a suspect class. *See id.* at 628-29 (identifying suspect classes). Rather, OCDLA argues that ORS 813.215(7) burdens a fundamental right—the right of access to the courts. In particular, OCDLA contends that ORS 813.215(7) impinges on a person's right to enter into a diversion agreement.

OCDLA's argument fails to distinguish the right of access to the courts from the right to statutory benefits. The fact that a statute extends a benefit to persons who have Class C driver's licenses but not to persons who have commercial driver's licenses does not mean that the state has denied persons who have commercial driver's licenses access to the courts. Rather, the right of access to the courts involves a person's ability generally to observe and participate in judicial proceedings. *See Tennessee v. Lane*, 541 US 509, 523, 124 S Ct 1978, 158 L Ed 2d 820 (2004) (describing scope of the right); *Christopher v. Harbury*, 536 US 403, 412-14, 122 S Ct 2179, 153 L Ed 2d 413 (2002) (same). Although the Supreme Court has struck down as violative of that right laws that deny certain persons meaningful access to the courts, it never

has held that the right guarantees to a person "an opportunity to seek some particular order of relief." *See Christopher*, 536 US at 413-14 (so noting); *see also Lewis v. Casey*, 518 US 343, 354, 116 S Ct 2174, 135 L Ed 2d 606 (1996) (right of access to the courts does not require states to enable persons to discover grievances or litigate effectively once in court).

Because ORS 813.215(7) does not burden a fundamental right, we are left to determine whether ORS 813.215(7) "bears a rational relation to some legitimate end." *See Romer*, 517 US at 631 (stating standard). OCDLA acknowledges that ORS 813.215(7) serves a legitimate governmental end—highway safety. OCDLA argues, however, that the statute bears no rational relationship to that end. We reach a different conclusion. The legislature reasonably could conclude that persons who are authorized to drive commercial motor vehicles may either drive larger, heavier vehicles or drive more miles than other drivers. Preventing persons who are authorized either to drive larger vehicles or to drive more frequently from participating in diversion and subjecting them to harsher sanctions the first time that they drive under the influence gives them an incentive to avoid that behavior and thus increases highway safety.

In sum, we conclude that the trial court erred in permitting defendant to enter into a diversion agreement. Defendant was not eligible for diversion under ORS 813.215(7) because he had a commercial driver's license when he drove under the influence of intoxicants. Disqualifying defendant from diversion for that reason does not violate either Article I, section 20, of the Oregon Constitution or the Equal Protection Clause of the Fourteenth Amendment.

Peremptory writ of mandamus to issue.

**WALTERS, J.,** dissenting.

This case did not come to us in the normal course. The state asked us to use our mandamus power under Article VII (Amended), section 2, of the Oregon Constitution[1] to

---

[1] Article VII (Amended), section 2, of the Oregon Constitution provides, in part:

"[T]he supreme court may, in its own discretion, take original jurisdiction in mandamus * * * proceedings."

order the trial court to reverse its order requiring defendant to undergo diversion. The trial court's decision was correct, and it was just. We should not have invoked our discretionary power to countermand it.

The trial court had before it a man who drove an ordinary passenger vehicle under the influence of intoxicants. That incident was defendant's first violation and the court ordered diversion because it found that requiring defendant to undergo evaluation and treatment for substance abuse was in the best interest of the community. The state resisted that order, arguing that an Oregon statute prohibits diversion. The purpose of that statute, according to the majority, is to impose stricter sanctions on those who are "authorized to drive commercial motor vehicles." 343 Or at 128.

The trial court considered that statute but did not deem it to bar diversion. The trial court found that defendant did not drive a commercial motor vehicle. He did not own or have access to a commercial vehicle. He did not have a job that required or permitted him to operate a commercial vehicle. He did not intend to acquire a commercial driver['s] license (CDL) and, therefore, did not undergo the examination or submit to the DMV the report of the medical examination necessary to obtain a CDL. He did not obtain or possess the medical certificate necessary to drive a commercial vehicle. At the same time, the DMV did not demand the required medical examination and report and did not carry out its responsibility to evaluate defendant's medical qualifications. Without the requisite medical examination, report, and certificate, the law only authorized defendant to drive an ordinary passenger vehicle; the vehicle he was driving at the time of the violation. Thus, reasoned the trial court, defendant would be treated the same as others who drive ordinary passenger vehicles. He would be required to complete diversion.

We have interceded and ordered the judge to impose a harsher sanction; a sanction the trial court did not choose when it determined the sanction that was in the best interest of the community. Why? And to what end?

I do not doubt that the majority sincerely believes that the wording of the applicable statutes did not leave it room to affirm what the trial court believed was right. I respect that view and yet I believe I must speak for two reasons.

First, Oregon law did not require us to take this case. The decision to invoke the constitutional power of mandamus is a decision within our own discretion. Or Const, Art VII (Amended), § 2. No injustice called us to use this extraordinary power; no wrong urged that we reach for this extraordinary remedy. *See Oregonians for Health and Water v. Kitzhaber*, 329 Or 339, 344-45, 986 P2d 1167 (1999) (stating mandamus in this court is an extraordinary remedy).[2]

Second, I am of the firm opinion that Oregon law does not compel the result the majority reaches. The law did not prohibit diversion because the document defendant possessed (1) was not a "commercial driver license" as that term is statutorily defined; and (2) was invalidly issued, granted no substantive right and could not, therefore, serve as a bar to diversion.[3]

I begin with the definition of "commercial driver['s] license." ORS 813.215(7) makes a defendant eligible for diversion if the defendant did not have a "commercial driver license" at the time of the DUII offense. ORS 801.207 defines a "commercial driver license" as a "driver license * * * that *authorizes* its holder to drive a commercial motor vehicle[.]" (Emphasis added.)

The document the DMV issued to defendant did not "authorize" him to drive a commercial motor vehicle. To "authorize" means "to give legal authority; to empower * * *,"

---

[2] In ordering diversion in this case, the trial judge took into consideration the fact that she had ordered diversion in a similar case, *State v. Scott*, Deschutes County Circuit Court case number MI 061354, and that the state did not appeal, or petition for mandamus, to overturn her order.

[3] Not a bit, much less most, of my reasoning turns on the fact that defendant did not intend to drive a commercial vehicle. If defendant had qualified to obtain a CDL, and the DMV had issued him a valid CDL that authorized him to drive a commercial vehicle, I agree that it would not matter that defendant did not intend to use it. But application of the pertinent statutes convinces me that the DMV did not issue defendant a valid CDL and, therefore, I conclude that defendant was eligible for diversion.

*Black's Law Dictionary* 143 (8th ed 2004), or "to endow with * * * effective legal power, warrant, or right," *Webster's Third New Int'l Dictionary* 146 (unabridged ed 2002). The document the DMV issued to defendant did not grant him "effective legal power, warrant, or right" to drive a commercial vehicle. The DMV did not fulfill its statutory responsibilities and, as a result, issued defendant a document that granted defendant effective power to drive only an ordinary passenger vehicle.

A commercial vehicle is enormous in weight, can carry numerous passengers, and may be used in mass transit or transportation of hazardous materials. ORS 807.031(3)(a) - (c). To qualify to drive a commercial vehicle, an applicant must undergo a medical examination within two years of the date of application and must meet additional federal requirements. ORS 807.040(1)(g) (requiring that applicant meet medical requirements prescribed by rule); OAR 735-074-0260(1) (adopting federal medical examination and certification requirements for CDL applicants); 49 CFR § 391.45(b)(1) (requiring medical examination and certification every 24 months). The medical examiner must be aware of the rigorous physical, mental, and emotional demands placed on the applicant, take the applicant's medical history and conduct a physical examination, and certify that the applicant does not have any physical, mental, or organic condition that might affect the applicant's ability to operate a commercial motor vehicle safely. 49 CFR § 391.43(f). An applicant is medically qualified to drive a commercial vehicle if, among other things, the applicant "has no current clinical diagnosis of alcoholism." 49 CFR § 391.43(b)(13).

For its part, the DMV must evaluate the applicant and determine that the applicant is qualified to drive a commercial vehicle. ORS 807.040(1)(g). The applicant for a CDL (including renewal of a CDL) must submit to the DMV a "report of a medical examination that establishes, to the satisfaction of the department, that [the applicant] meets the medical requirements" for that class of license. ORS 807.040(1)(g); ORS 807.150(2). To assure itself that the applicant is physically and mentally capable of driving a commercial vehicle, the DMV must examine that report.

If the DMV determines that the applicant for a CDL is not qualified to drive a commercial vehicle, the DMV may issue the applicant a license to drive an ordinary passenger vehicle. ORS 807.150(4).[4] Concomitantly, a person who does not undergo a medical examination and obtain a medical certificate may drive only an ordinary passenger vehicle. ORS 807.100 provides that, to operate a commercial motor vehicle, a person must have a medical certificate issued within two years of the date of operation.[5] Without that certificate, a person only has authority to drive a passenger vehicle. ORS 807.100.

The majority initially argues that, although DMV did not demand or evaluate defendant's medical certificate or medical qualifications, it validly issued defendant a CDL under the terms of an administrative rule requiring CDL applicants to self-certify compliance with all federal regulations. The majority goes on, however, to recognize "that there may be some question whether an applicant's certification * * * constitutes a 'report of a medical examination' within the meaning of ORS 807.040(1)(g)." 343 Or at 125. Neither the wording of the statute nor public safety leave any room for question. The statute requires a medical report, not self-certification. And the DMV did not even obtain self-certification.

The statute at issue, ORS 807.040(1)(g), provides, in part:

---

[4] ORS 807.150(4) provides:

"If a person who applies for a renewal under this section is not qualified to renew the class of license sought to be renewed, the department may issue the person any lower class of license for which the person qualifies in lieu of renewing the person's license for the class of license held by the person."

I use the term "ordinary passenger vehicle" to refer to those vehicles that are not commercial motor vehicles and for which a CDL is not required.

[5] ORS 807.100 provides:

"A vehicle that may be operated only by the holder of a commercial driver license may be operated only when a medical certificate approved by the Department of Transportation is in the licensee's immediate possession and has been issued within two years prior to the date of operation of the vehicle. The holder of a commercial driver license who does not have a medical certificate required by this section may exercise driving privileges granted by a Class C license."

"[T]he [applicant] must submit to the department, in a form approved by the department, the report of a medical examination that establishes, to the satisfaction of the department, that the person meets the medical requirements for the particular class of license."

The medical report must be in a form approved by the DMV. The DMV, by rule, requires the use of forms prescribed by federal regulation. OAR 735-074-0260(1) (adopting federal regulations by reference); 40 CFR § 391.43(f), (h) (setting forth forms); OAR 735-074-0280(4) (stating medical certificate must comply with federal regulations). The required forms are (1) a detailed medical examination report form completed by the medical examiner, 40 CFR § 391.43(f); and (2) a medical certificate, signed by the medical examiner, certifying that the applicant is medically qualified to drive a commercial vehicle, 40 CFR § 391.43(h). ORS 807.040(1)(g) requires that the report, not the applicant, establish that the applicant meets the medical requirements for a CDL.

The administrative rule that the majority contends *may* permit self-certification, provides that an applicant for a renewal CDL "must certify on the renewal application that he or she meets *all* of the driver qualification requirements" set forth in federal regulations. OAR 735-074-0290(3) (emphasis added). Although the majority describes that rule as requiring that the applicant certify "that he or she * * * has a medical certificate," 343 Or at 120, that rule does not explicitly reference medical requirements. That rule does not purport to define the statutory term "report of medical examination" or to dispense with the statutory requirement that all applicants submit, as proof of compliance with one particularly important qualification requirement, a report of a medical examination. That rule is not inconsistent with the statutory requirement and simply requires, in addition, that applicants self-certify compliance with all federal qualification requirements.[6]

---

[6] OAR 735-074-0290(3) is consistent with the federal regulations that require that all CDL applicants certify that they meet all federal requirements. 49 CFR § 383.71(a)(1), (c)(1). That self-certification is not limited to renewal applicants or to medical qualifications.

Furthermore, the DMV did not even comply with its self-certification rule when it provided defendant with an application form for signature. That form requires a statement that *if* the applicant is renewing a CDL *used in interstate operations,* the applicant certifies that he or she meets federal requirements. Defendant did not intend to renew any CDL, much less one used in interstate operations. By signing the form DMV gave him, he certainly did not self-certify that he "possessed a medical certificate." The legislature did not leave the important matter of medical qualification to drive commercial vehicles to CDL license applicants. It required that the DMV evaluate a medical report from a medical professional before granting a CDL, and it made that requirement applicable to all CDL applicants. No administrative rule can contravene those statutory requirements. *See Planned Parenthood Assn. v. Dept. of Human Res.,* 297 Or 562, 565, 687 P2d 785 (1984) (holding agency exceeds authority when it adopts a rule that contravenes an applicable statute).

The majority should have pointedly instructed the DMV that it erred in granting defendant a document labeled CDL without proof of his medical qualifications.[7]

Had the majority done so, the technical point on which its opinion stands would be apparent. The majority concludes that, even if the document defendant had in his possession was invalidly issued, it was in his possession, and therefore, diversion was prohibited. The law does not require that we view her with such narrow blinders. There are at least two principled reasons to think more purposefully.

First, the document the DMV issued did not "authorize" defendant to drive a commercial vehicle and was not,

---

[7] The DMV's failure to obtain proof of medical qualifications was not a one-time error. The trial court in this case took judicial notice of another case in which the DMV granted a CDL to an applicant without determining her medical qualifications. *State v. Scott,* Deschutes County Circuit Court case number MI 061354. In the *Scott* case, a witness for the DMV testified that the DMV no longer requires proof of eligibility for CDL renewal, and that the DMV employees are instructed not to request proof of a valid medical certificate and are not required to ask if the applicant is eligible for a CDL. We have also been presented with another petition for mandamus raising similar issues. *See State v. Barnes,* (SC S55001) (filed June 27, 2007).

therefore, a CDL, as the statute defines that term. Because defendant did not intend to acquire a CDL, he did not undergo a medical examination, submit to DMV a report of a medical examination, or carry a medical certificate on his person.[8] The DMV did not determine that defendant was qualified to drive a commercial vehicle and the agency had authority to issue him only a license to drive an ordinary passenger vehicle. ORS 807.150(4). No matter what label the document the DMV issued carried, defendant was entitled to drive only an ordinary passenger vehicle. ORS 807.100. Therefore, the document the DMV issued to defendant did not meet the definition of a CDL. It did not "authorize" him to drive a commercial vehicle because it did not grant effective legal power to do so.

The majority takes on the definitional issue by attempting to cut a fine line, opining that the document in defendant's possession "authorized" him to drive a commercial vehicle, while the absence of a medical certificate disabled him from exercising that authority.[9] But the power to act, given with one hand and taken away with the other, is not a power with legal heft. A power that cannot be exercised is not "effective" legal power.

Second, putting aside the definitional issue, we should not give substantive legal effect to an invalidly issued document. Even if I granted that the legislature intended to make the theoretical distinction between the legal grant of power and the ability to exercise it when defining CDL, I cannot conclude that, in this instance, the DMV validly granted defendant even the bare legal power to drive a commercial

---

[8] Defendant did not fail to do what he was required to do. He did not undergo a medical examination, or obtain or submit a medical examination report because he did not intend to acquire a CDL. The application form defendant signed indicated only that "*if* renewing a commercial driver's license used in interstate operations," the applicant certified that he met federal requirements. (Emphasis added.)

[9] In a footnote, the majority argues that it must be a "license" that authorizes its holder to drive. 343 Or at 123 n 2. But, is a license necessarily a document labeled license? And if a person cannot drive unless he or she has a medical certificate, is it not the medical certificate that constitutes the license? Or do not those two documents together constitute the license, as defined, in that they are both necessary to authorize their holder to drive a commercial motor vehicle? To me, a document that is labeled license, but that does not actually permit its holder to drive, does not confer the authority required to meet the definition of a CDL.

vehicle. The DMV did not fulfill its statutory responsibilities and wrongly issued defendant a document labeled CDL. The minute the DMV wrongly issued defendant the document labeled CDL, it was subject to cancellation and surrender. ORS 809.310(1), (4).[10] Defendant had in his possession a document no different than an expired CDL. Both are labeled CDL. Neither grants an enforceable right to drive a commercial vehicle. Neither is of any real force and, as a result, neither should be given a real, substantive effect.

In prior cases, the court has refused to give force and effect to documents labeled "license" or "permit" when they were invalidly issued. In *Li v. State of Oregon*, 338 Or 376, 110 P3d 91 (2005), the court ruled that marriage licenses that Multnomah County had issued to same-sex couples had been issued without authority and thus "were void at the time that they were issued." *Id.* at 397. In *Bankus v. City of Brookings*, 252 Or 257, 449 P2d 646 (1969), the court considered a city ordinance that prohibited excavation without a permit. Plaintiff paid the deposit the city asked him to pay, obtained a permit, and began work. *Id.* at 258-59. The city ordered the excavation halted because plaintiff had not paid the deposit required by ordinance. *Id.* at 259. Plaintiff sought to enjoin the city "from reneging on the permit issued." *Id.* The court ruled that the permit was issued without following the provisions of the ordinance and permitted the city to rescind the permit. *Id.* at 259-60. The invalidly issued permit did not grant plaintiff authority to continue with the project.

In sum, the issuance of an invalid document does not authorize action, or endow the recipient with effective legal

---

[10] ORS 809.310(1) and (4) provide:

"The Department of Transportation may cancel any driving privileges upon determining that the person is not entitled to the driving privileges under the vehicle code. The department may reissue driving privileges canceled under this subsection when the applicant has satisfied all requirements for the driving privileges sought.

"* * * * *

"Upon suspension or cancellation of driving privileges under this section, a person whose privileges are suspended or canceled shall surrender to the department any license or driver permit issued for the driving privileges. Failure to comply with this subsection is subject to penalty as provided under ORS 809.500."

power.[11] Neither should it expose the recipient to a substantive negative consequence.

Most importantly to me, the life the majority breathes into the otherwise impotent document in the possession of defendant stands it muscularly between defendant and diversion. The legislature designed the diversion program with two important purposes in mind: the first, to determine the extent to which defendant's conduct was the result of an alcohol problem; the second, to treat that problem. ORS 813.210(4)(b), (c). A trial court can only order diversion if a driver has no DUII conviction within ten years of the commission of the present offense, ORS 813.215(2), and even then can only do so if the judge determines that diversion will benefit the community as well as the defendant, ORS 813.220(1) - (3). When a court denies diversion, an alcohol problem may go undetected and untreated, and the wrongful conduct may be repeated, not only to the detriment of the defendant, but also to the detriment of the community.

In providing that trial courts cannot order diversion for those who hold CDLs, the legislature has decided to treat such persons differently than others who violate the law. The majority states the reason that that distinction is constitutionally permissible:

> "The legislature reasonably could conclude that persons who are authorized to drive commercial motor vehicles may either drive larger, heavier vehicles or drive more miles than other drivers. Preventing persons who are authorized either to drive larger vehicles or to drive more frequently from participating in diversion and subjecting them to harsher sanctions the first time that they drive under the influence gives them an incentive to avoid that behavior and thus increases highway safety."

343 Or at 128. The majority does not state that the legislature reasonably could conclude that highway safety would be

---

[11] The majority seems to argue that until the DMV goes through some administrative cancellation process, a person in possession of an invalidly issued CDL is authorized to drive a commercial vehicle. *See* 343 Or at 126 n 6. In fact, unless it determines that an applicant has the necessary medical qualifications, the DMV does not authorize an applicant to drive a commercial vehicle in the first instance. ORS 807.040(1)(g); ORS 807.150(2), (4). Such a person may drive only an ordinary passenger vehicle. ORS 807.100.

increased by subjecting persons who possess documents labeled CDLs, but who are not qualified or authorized to drive commercial vehicles, to harsher sanctions.[12]

The legislature has authorized the DMV to grant applicants who do not prove they are qualified to drive commercial vehicles only the driving privileges granted to drivers of ordinary passenger vehicles. The legislature has made the drivers of ordinary passenger vehicles eligible for diversion. Those whose driving privileges are similarly limited should be similarly eligible. I urge the fairness of a two-sided coin. The beneficial side of the coin is real authority to actually drive a commercial vehicle; the limiting side is the inability to participate in diversion. Grant of a substantive right on one side; consequence on the other. The legislature did not mandate a flip that can only come up tails: granting naught and penalizing regardless.

I respectfully dissent.

---

[12] I recognize that there may be circumstances in which, for ease of administration, the legislature could seek to impose a consequence on a person who has a particular document in his or her possession regardless of whether that document was validly issued. The legislature has not, by the words of the statute, chosen to do so here, and the procedure for granting diversion requires a hearing by a judge in any event. ORS 813.210; ORS 813.220. A judge is required to exercise discretion in granting or withholding diversion and can adduce the necessary facts in that proceeding. ORS 813.220(1) - (9).