Submitted May 27, affirmed December 16, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVEN JAMES BERLINER,
*Defendant-Appellant.*

Lincoln County Circuit Court
052028; A134929

222 P3d 744

Peter Gartlan, Chief Defender, and Robin A. Jones, Senior Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Rolf C. Moan, Acting Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant, while intoxicated, lost control of his vehicle and drove it off of a rural road. As a result of the accident, one of his passengers suffered fatal injuries and another was seriously injured. A jury found defendant guilty of manslaughter in the first degree, manslaughter in the second degree, assault in the third degree, driving under the influence of intoxicants (DUII), reckless driving, and reckless endangerment of another person. On appeal, he maintains that the trial court erred with respect to matters involving jury selection, the admission of unfairly prejudicial evidence of uncharged conduct, and the evaluation of his blood alcohol content at the time of the accident. We affirm.

Because defendant was convicted after a jury trial, we state the facts in the light most favorable to the state. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113, 128 S Ct 906 (2008). Defendant attended a party at the home of a neighbor in rural Lincoln County. He began drinking beer and smoking marijuana shortly after he arrived and continued to do so until around 10:00 p.m., when he and two friends decided to leave the party to go to a bar. They started off in defendant's vehicle, a 1972 sport utility vehicle that defendant used to go "mudding." The vehicle had a roll bar, but no doors and no top. Defendant was driving. Nobody was wearing a seat belt, and defendant was carrying a cup of beer in one hand. As he started down a hilly, wooded road, he lost control of the vehicle. It hit a tree and rolled down a steep embankment. All three occupants were injured and taken to a hospital, where one of the passengers died from his injuries. Also at the hospital, a laboratory technician supervised a test to determine defendant's blood alcohol content (BAC) based on the alcohol content of his blood plasma, but not his whole blood. That test showed a BAC of .086.

Defendant's first trial ended in a hung jury. On retrial, he was convicted of the crimes specified above.

In his first assignment of error, defendant argues that the court should have excused one of the members of the jury pool, Card, for cause. Card was a journalist in the local community. In the process of reporting on defendant's first

trial, he had read the police records regarding the accident. Defendant moved to remove him for cause because he had been exposed to inadmissible evidence and that exposure would unalterably taint his ability to deliberate based only on evidence presented at trial. The trial court denied the motion, concluding that Card would be able to follow jury instructions and set aside any independently acquired knowledge in order to decide the case based only on what was presented at trial. Defendant subsequently used one of his peremptory challenges to remove Card from the jury.

Defendant argues that failing to remove Card for cause created a fundamentally unfair trial in violation of the state and federal guarantees of "an impartial jury." Acknowledging that Card did not, in fact, sit on the jury, defendant argues nonetheless that, because he had to use one of his peremptory challenges on Card, he might have used the challenge differently had the court removed Card for cause.

■ We doubt that the court's decision not to remove Card was an abuse of discretion. Defendant's argument relies on the assumption that, because Card had independent knowledge of some possibly inadmissible facts regarding the case, he had to be removed. That is not the law. "[A] prospective juror's prior knowledge concerning a case does not disqualify the juror unless the juror has 'such fixed opinions that [he or she] could not judge impartially the guilt of the defendant.' " *State v. Rogers*, 313 Or 356, 367 n 3, 836 P2d 1308 (1992), *cert den*, 507 US 974 (1993) (citations omitted). Nothing in the record of this case suggests that Card's knowledge would have prevented him from judging impartially.

■ More fundamentally, however, it is well settled that, as the state argues, "the erroneous overruling of a challenge for cause is not prejudicial error even if the defendant was forced to use a peremptory challenge to excuse the juror, as long as, in the end, it does not appear that the defendant was compelled to accept an objectionable juror on the jury." The Supreme Court has so held. *State v. Douglas*, 310 Or 438, 441-42, 800 P2d 288 (1990). Here, defendant did not object to any juror who ultimately served and heard the case and, on appeal, he does not argue that the jury that eventually was empanelled was not impartial. *See State v. Barone*, 328 Or

68, 72-73, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000) (fact that a venireperson was not removed for cause does not create reversible error; a defendant is entitled to impartiality, not control over composition of jury). Defendant's first assignment of error therefore lacks merit.

■ In his second and third assignments of error, defendant argues that the trial court erred in admitting evidence of a prior DUII conviction and, along with evidence of the conviction itself, newspaper articles that he was assigned to read and letters that he was assigned to write in response to those articles as required by his probation for that conviction. The two newspaper articles described two different car accidents that were the result of drunk and reckless driving, respectively. The articles were heavily redacted, and all that remained for the jury were the headlines. The letters in question were not redacted.

Defendant concedes that the evidence was relevant to prove that he acted recklessly, that is, that he was "*aware of* and consciously disregard[ed] a substantial and unjustifiable risk * * *." ORS 161.085(9) (emphasis added). Recklessness, of course, is an element of reckless driving, ORS 811.140,[1] and of recklessly endangering another person, ORS 163.195.[2] Defendant maintains that, despite its relevance, the evidence was overly prejudicial under OEC 403,[3] as well

---

[1] ORS 811.140 provides:

"(1) A person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property.

"(2) The use of the term 'recklessly' in this section is as defined in ORS 161.085.

"(3) The offense described in this section, reckless driving, is a Class A misdemeanor and is applicable upon any premises open to the public."

A person acts "recklessly" as defined in ORS 161.085(9) when

"that [ ] person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

[2] ORS 163.195(1) provides, "A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

[3] OEC 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

as cumulative; the state could have made its point by introducing evidence that defendant had attended a Victim Impact Panel.

■ We review the trial court's ruling for abuse of discretion, and we generally defer to the trial court's decision whether the probative value of evidence is substantially outweighed by the potential for prejudice. *State v. Williams*, 313 Or 19, 29-30, 828 P2d 1006, *cert den*, 506 US 858 (1992). We conclude that the trial court did not abuse its discretion. In *State v. Wyant*, 217 Or App 199, 175 P3d 988 (2007), *rev den*, 344 Or 558 (2008), we held that evidence of a prior DUII conviction is relevant for a noncharacter purpose—that is, to prove that a defendant had subjective knowledge and manifested an extreme indifference to human life. *Id.* at 203; *accord State v. Coen*, 231 Or App 280, 220 P3d 423 (2009). The same holds true here. Similarly, the newspaper articles and defendant's letters are even more specific and express evidence that defendant was consciously aware of the dangers associated with drinking and driving. We agree with the trial court that, while the evidence may be prejudicial to defendant, it is not *unfairly* prejudicial.

■ Defendant's final two assignments of error deal with evidence of his BAC. He argues, first, that the evidence derived from the hospital test was inadmissible because the state failed to establish that the test was performed according to procedures established by statute. Second, he argues that the court erred in not allowing testimony from an expert that the BAC derived by the hospital test, .086, was artificially elevated because that test used only blood plasma instead of whole blood. The expert would have testified that the relevant scientific community discounts plasma results by 15 percent, so a more accurate reading of defendant's BAC was .073.

These assignments of error present interesting questions, but we need not address them. That is so because, under ORS 813.010(1), a person commits the offense of driving under the influence of intoxicants if he or she has a BAC

---

confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

of .08 or more, *or* if the person is "under the influence of intoxicating liquor, a controlled substance or an inhalant," *or* if the person is "under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance." ORS 813.010(1)(a)-(c). Defendant admitted that he was under the influence of intoxicants to such an extent that he was "impaired." He testified as follows:

"[Defense Attorney:] Okay. So you get there at three. You're hanging out with your friends. Um, what happens while you're there?

"[Defendant:] Well, uh, we smoked some pot when we were there.

"\* \* \* \* \*

"[Defense Attorney:] Okay. Now smoking pot and driving a vehicle. Does that affect your ability to drive?

"[Defendant:] Um, yes, it does.

"\* \* \* \* \*

"[Defense Attorney:] How much had you had to drink this day? The day of the accident. Excuse me.

"[Defendant:] Less than ten cups of beer.

"[Defense Attorney:] Okay. Over what time period please?

"[Defendant:] Uh, seven hours.

"[Defense Attorney:] When you say less than ten cups, can you give a more specific number?

"[Defendant:] I'll say ten. I think ten's fair.

"\* \* \* \* \*

"[Prosecutor:] You admit, after drinking ten beers and smoking marijuana, you were, in fact, intoxicated when you left that party.

"[Defendant:] Yes. I had some level of intoxicant. Yeah.

"[Prosecutor:] You were impaired.

"[Defendant:] Yes."

We have held that, when a defendant admits not only that he consumed intoxicants, but also that he was intoxicated, any error regarding BAC evidence is harmless. *State v. Coen*, 203 Or App 92, 106, 125 P3d 761 (2005), *rev den*, 341 Or 141 (2006). That is the situation here.

Affirmed.