Submitted June 7, 2013, affirmed May 21, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID ROBERT MANNIX,
*Defendant-Appellant.*

Josephine County Circuit Court
100161M; A148805

326 P3d 1236

David Robert Mannix filed the opening brief *pro se.*

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

**SCHUMAN, S. J.**

Defendant was convicted of misdemeanor driving under the influence of intoxicants (DUII), ORS 813.010(4). On appeal, he challenges several aspects of the trial that resulted in that conviction. Defendant asserts that the court erred by: (1) "constructively" depriving him of legal counsel; (2) determining that he was not eligible for diversion because he had a commercial driver's license; (3) failing to dismiss for cause a juror who was engaged to be married to the daughter of the state's main witness, the arresting officer; and (4) polling the jury by asking the foreman whether the jurors' decision was unanimous rather than asking each juror individually. Although defendant's trial may have been far less than perfect, we nonetheless affirm for the reasons that follow.

The relevant facts are not in dispute. A patrol sergeant with the Grants Pass Department of Public Safety saw the car that defendant was driving speeding and drifting onto the centerline. After stopping defendant and interacting with him, the officer noticed signs of alcohol impairment. After administering field sobriety tests, the officer arrested defendant. Approximately one hour later, the results of a breath test showed that defendant had a blood alcohol content of .07 percent, .01 percent below the standard for presumptive intoxication.

After his arraignment, defendant was found to be financially eligible for a court-appointed attorney. Court staff at the Income Verification Office (IVO) found, however, that defendant was financially able to contribute an "application fee" of $20 and a "contribution amount" of $220 towards the cost of court-appointed counsel. The trial court thereafter issued a limited judgment ordering defendant to pay $240 in fees. That limited judgment was issued pursuant to ORS 151.487 (2009), which provided:

> "(1)   If in determining that a person is financially eligible for appointed counsel under ORS 151.485, the court finds that the person has financial resources that enable the person to pay in full or in part the administrative costs of determining the eligibility of the person and the costs of the legal and other services to be provided at state expense

that are related to the provision of appointed counsel, the court shall order the person to pay judgment requiring that the person pay *** the amount that it finds the person is able to pay without creating substantial hardship in providing basic economic necessities to the person or the person's dependent family. The amount that a court may require the person to pay is subject to the guidelines and procedures issued by the Public Defense Services Commission as provided in subsection (4) of this section.

"* * * * *

"(4)   The commission shall promulgate and issue guidelines and procedures:

"(a)   For the determination of persons provided with appointed counsel who have some financial resources to pay in full or in part the administrative, legal and other costs under subsection (1) of this section; and

"(b)   Regarding the amounts persons may be required to pay by a court under subsection (1) of this section.

"(5)   The determination that a person is able to pay or partially able to pay, or that a person no longer has the ability to pay the amount ordered in subsection (1) of this section, is subject to review at any time by the court."

The limited judgment did not cite or refer to any "guidelines or procedures" used to reach that decision.

During a subsequent status check hearing, defendant questioned the $240 assessment. He explained that, although he wanted a court-appointed attorney, he believed that he was entitled to one without cost. He further explained that he "need[ed] to look at the guidelines in order to explore that." The court told defendant that court staff would follow up with that information. During a later hearing, defendant submitted a written request, which the court agreed to treat as a "written request to review [the ruling regarding defendant's] ability to partially pay for his [court-appointed attorney] pursuant to ORS 157.487(5)."

Defendant's request for a review read:

"1.   Please be advised that I cannot afford counsel in this matter.

"2.   That I have been offered counsel but at a price that I cannot afford,

"3.   That court officers have refused to disclose the legal basis for their determination,

"4.   That I believe that said determination is incorrect, and that I hereby appeal, and

"5.   That I proceed in accepting counsel, and said counsel is proffered and retained by the courts in their full knowledge that I cannot and will not make any contribution to fees or expenses in this matter."

The court ruled that defendant's "assets are such that he is able to contribute towards the cost of his [attorney] fees [and] that the findings of the Verification Offices are supported in the record and are proper." The court went on to find that the IVO had "properly applied the guidelines of the Public Defense Services Commission as provided in ORS 157.487(1) [and] (4)." Finally, the court determined that, should defendant choose to proceed *pro se*, there would be no $220 contribution, leaving defendant responsible for only the $20 application fee.

At yet another hearing, defendant again took issue with the unavailability of the guidelines used by the IVO. Defendant also claimed that the trial court's ruling had misinterpreted the substance of his earlier request for review. According to defendant, "[W]hat [the court] was supposed to be ruling on was my pointing out to the Court that I did not have the guidelines in order to formulate * * * my appeal, not that I was doing the appeal because obviously * * * I can't do the appeal until I know what the governing law is." Defendant also challenged the validity of any guidelines used by the IVO, alleging that they were not published according to the requirements of Oregon's Administrative Procedures Act (APA).

The court indicated that it would not alter its prior ruling and that defendant could either pay the $220 contribution amount or waive his right to an attorney and proceed *pro se*. Defendant responded that he could not render a decision without having access to guidelines. He stated, "I cannot and, therefore, will not be paying that fee." The court stated, "Then that tells me that the court-appoint—

court-appointment is going to lapse." The court later issued an order ending the court-appointed counsel's representation of defendant and setting aside the $220 contribution fee.

In the meantime, defendant filed a motion alleging that the contribution fee assessed on him was invalid because it was the product of "rules" that were not issued in accordance with the APA. That motion asked the court for an order either dismissing the charges or "appointing counsel without charge to [d]efendant, and the waiver of all costs and fees[.]" The trial court again found that the IVO had properly followed procedures and determined that there would be no change in the court-ordered contribution amount. The court suggested to defendant that if he were to accept court-appointed counsel, the court would "delay any decision on what your financial contribution would be for that court-appointed counsel until the end of the case." Defendant again insisted that he could not make that decision until he saw the guidelines. The court then suggested that defendant call the Public Defense Services Commission directly to get more information about the guidelines. The court emphasized, however, that defendant's indecision about whether to accept trial counsel would not delay his criminal proceeding any further, explaining that "not answering the question will have the same effect as telling me that you do not wish to have counsel as of today."

The following exchange then occurred:

"THE DEFENDANT: I do wish to have counsel, however, I cannot wholehearted—wholeheartedly sign on to that any more than I can wholeheart—wholeheartedly sign on to anything requiring me to incur a potential financial obligation until I know what that obligation is.

"THE COURT: You know what the potential obligation would be, the $220, you've already been informed of that figure by the IVO. You know that that is the highest obligation that you would have for your court-appointed contribution. You've already been informed of that. So, that would be the maximum.

"What I have told you in this hearing is that if you wish to have court-appointed counsel the Court would wait until

the case has been finalized and then make a decision as to what your contribution would be, it would be a maximum of $220.

"THE DEFENDANT:    I wish to have counsel, I cannot afford $220.

"THE COURT:    And that would be the statement you would make at the conclusion of your case when the judge hearing your case is making the decision as to what your contribution would be.

"THE DEFENDANT:    And that's—that would be my answer to your question today, Your Honor."

Defendant subsequently contacted the Office of Public Defense Services (OPDS) requesting a citation to the administrative rule establishing the financial eligibility guidelines. OPDS responded via e-mail, explaining that the guidelines are published in a manual that is distributed to all circuit courts. OPDS also provided "the chapter on eligibility determination and the Josephine County attorney fee schedule." Defendant then filed another motion to dismiss, arguing, among other things, that the information provided by OPDS was "non-responsive" because it did not contain "the actual rules." A hearing on the motion was held in November 2010, and defendant's motion was denied. During that hearing, defendant was asked to sign a written waiver of counsel, which he refused to do, insisting he did not wish to waive counsel. Defendant did, however, agree to read the form but insisted that he was not waiving counsel. The court explained, "I understand. And I just ask that you take a moment to read that and then we'll make a notation, if you do not choose to sign it [then] that's the case. I just want to make sure you have that." On the motion form, the court did not check the box indicating that defendant had "knowingly, voluntarily, and intelligently waived the right to counsel," but noted that defendant had read the document in the courtroom and had declined to sign it.

Trial was held in April 2011. During jury selection, it was discovered that one of the jurors, Rankin, was engaged to be married to the daughter of the state's primary witness, the officer who performed field sobriety tests

on, and eventually arrested, defendant. While the *voir dire* process was not transcribed, the trial court elected to make the following record of defendant's motion to disqualify that juror:

> "THE DEFENDANT:   Yes, the—the question—I was—took particular note when at the end of—end of the DA's *voir dire* she referred to the catch all question—the law I guess applies to—raises such issues as affinity and family relationship as—as grounds for—for disqualification for cause. And the question hinges on whether or not the fiancé of the police officer's daughter, and the police officer being the State's primary witness, would not be, as a matter of law and common sense, constitute a family relationship that ought to be—automatically make him subject to exclusion for cause.
>
> "THE COURT:   Thank you.
>
> "THE DEFENDANT:   So—
>
> "THE COURT:   And as I indicated in—when we were selecting the jury in a different room, I can't—I couldn't find in the statute that Mr. Rankin would be automatically disqualified and he, when asked about bias due to his upcoming relationship, he—he answered the way that would not cause him to be excused for cause. Okay."

Defendant said nothing more on the subject. He used a preemptory challenge to excuse Rankin from the jury.

After a one-day trial, the jury returned a guilty verdict on the charge of DUII. The court asked if either party wanted to poll the jury, and defendant indicated that he would. Instead of asking each juror individually about how he or she voted, however, the court asked the presiding juror if the vote was unanimous. When that juror responded that it was, the jury was dismissed. Defendant did not object to that polling procedure.

We begin by addressing defendant's argument that the trial court "constructively denied [d]efendant legal counsel." Defendant contends that the court did so by failing to allow him *free* legal counsel at the outset of the trial and ruling, instead, that defendant could raise the issue concerning how much he had to contribute to the cost of his defense, up

to a maximum of $200, at the end of the trial. Underlying that claim of error is the assertion that the rule on which the court relied to arrive at the $220 figure was invalid because it was not published.

The state's only response to defendant's first assignment of error is to argue that the court's denial of defendant's motion is not reviewable in this criminal appeal. According to the state, defendant was required to appeal the limited judgment ordering him to pay fees under ORS 19.205, which allows for appeals from special statutory proceedings, within 30 days of the judgment being entered. The state's argument relies on *State v. Shank*, 206 Or App 280, 136 P3d 101 (2006), which also involved a dispute over a contribution amount for a court-appointed attorney. Typically, in order to be appealable as a "special statutory proceeding" under ORS 19.205, a proceeding must be separate from all other judicial proceedings. *State v. Threet*, 294 Or 1, 6, 653 P2d 960 (1982). Thus, in *Shank*, the issue was whether a limited judgment requiring defendant to contribute $127 towards the cost of her court-appointed counsel was "sufficiently separate and distinct from the criminal action to qualify as a judgment in a special statutory proceeding." 206 Or App at 285. For three reasons, we concluded that an order entered pursuant to ORS 151.487 is a limited judgment in a special statutory proceeding:

"First, *** while [ORS 151.487] often pertains to orders made in conjunction with criminal cases, [it] may also be invoked in any case in which a person has a 'constitutional or statutory right to counsel.' ORS 151.485(1). Second, not all criminal cases will involve orders under ORS 151.487. Thus, all orders under that statute are not *necessarily* a part of a criminal case. Finally, although orders under ORS 151.487 pertain to an indisputably important aspect of a criminal case—assistance of counsel—the orders have no effect whatsoever on whether counsel will be appointed. *See* ORS 151.487(2) (failure to obey order is not grounds for withdrawal of attorney). That is, counsel's actual representation of a defendant at a criminal trial would not be affected by any dispute over an order entered pursuant to ORS 151.487, and a criminal action would not be interrupted if the order were appealed during the course of the criminal action."

*Id.* at 286 (emphasis in original). Defendant does not acknowledge the existence of *Shank*, let alone convince us that it was wrongly decided. We therefore reject defendant's first assignment of error without deciding the merits of his argument regarding the validity of the rule underlying the court's limited judgment or the merits of that judgment itself.

In his second assignment of error, defendant argues that the court erred in ruling that, because he has a commercial driver license, he was ineligible to participate in a diversion program. *See* ORS 153.090(7) ("If a person holds a commercial driver license, a court may not defer entry of a judgment or allow an individual to enter into a diversion program."). According to defendant, he does not have a commercial driver license because being in possession of a valid medical certificate is a necessary requirement for holding such a license, ORS 807.100 (2009), and he allowed his medical certificate to expire. In support of that contention, defendant relies on a dissenting opinion in *State v. Orueta*, 343 Or 118, 128, 164 P3d 267 (2007) (Walters, J., dissenting). The majority in that case, however, rejected the same argument that defendant advances here. *Id.* at 126. His attempt to distinguish *Orueta* on the ground that the case was decided under the Supreme Court's mandamus jurisdiction is unpersuasive; the route that the case took to arrive at the court does not alter the court's unambiguous holding. We therefore affirm without further discussion the trial court's determination that defendant was not eligible for diversion.

In defendant's third assignment of error, he challenges the trial court's refusal to dismiss for cause a potential juror, Rankin, who was engaged to be married to the daughter of the state's only witness, the arresting officer. The record shows that defendant ultimately was required to use a peremptory challenge to disqualify Rankin. In a criminal trial, a challenge to potential jurors may be made for implied bias, ORS 136.220, or actual bias, ORS 136.210(1) and ORCP 57D. A juror has an implied bias when that juror is in one of several different types of relationships including, as relevant here, "[c]onsaguinity or affinity within the fourth degree to the person alleged to be injured by the offense charged in the accusatory instrument, to the complainant

or to the defendant." ORS 136.220(1). That, clearly, is not the situation here; the juror's bias, if any, would not derive from his relationship to the injured person, the complainant, or defendant, but to a prosecution *witness*. "Actual bias," on the other hand, depends on a potential juror's state of mind; it occurs if "the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror." ORCP 57 D(1)(g). Whether a juror is actually biased is a question of fact to be decided by the trial court. *Id.* Specifically, the trial court "must find from all the facts that the juror will be impartial and fair and not be consciously or unconsciously biased." *State v. Montez*, 309 Or 564, 575, 789 P2d 1352 (1990). We review a trial court's determination for abuse of discretion. *Id.*

The court may well have abused its discretion in refusing to dismiss for cause a juror who, although not related by consanguinity or affinity to the complainant, was *committed* to becoming related by affinity to the *state's* only *witness*. Regardless, even if the court did err, that error was not reversible. A long and unbroken series of Oregon appellate cases establishes that "[t]he erroneous overruling of a good challenge for cause, thereby compelling the use of a peremptory challenge, is not prejudicial error where it does not appear that the challenger was compelled to accept an objectionable juror." *State v. Megorden*, 49 Or 259, 263-64, 88 P 306 (1907); *accord State v. Barone*, 328 Or 68, 72-73, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000); *State v. Douglas*, 310 Or 438, 441, 800 P2d 288 (1990); *State v. Farrar*, 309 Or 132, 158, 786 P2d 161, *cert den*, 498 US 879 (1990) ("Defendant acknowledges that he removed the juror thereafter from the jury panel through his use of a peremptory challenge. Consequently, the juror did not actually sit on the jury that was empanelled for trial. * * * Defendant did not and does not argue that any member of the jury panel that actually decided his guilt should have been excused for cause."); *State v. Rathie et al*, 101 Or 339, 348-49, 199 P 169 (1921); *State v. Berliner*, 232 Or App 539, 542, 222 P3d 744 (2009), *rev den*, 348 Or 291 (2010). Defendant does not contend that, because he had to use a peremptory challenge to disqualify Rankin, he had to accept an objectionable juror. We consequently reject his third assignment of error.

Finally, defendant argues that the court erred in failing to poll the jurors individually. However, defendant did not object to the court's procedure at the time; had he done so, the record surely would have developed differently. We therefore conclude that defendant's fourth claim of error is not preserved, and, even if it were plain error—a question that we do not address—we would not exercise our discretion to correct it. *See* ORAP 5.45.

Affirmed.