IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JOSEPH W. ANGEL, )
)
        Plaintiff, ) TC-MD 110980C
)
   v. )
)
MULTNOMAH COUNTY ASSESSOR, )
)
        Defendant. ) **DECISION**

This matter is before the court on the parties' cross-motions for summary judgment.
Plaintiff filed his Complaint on September 16, 2011, challenging Defendant's notices of
disqualification from forestland special assessment of approximately 34 acres of land located on
property identified as Accounts R324402, R324403, and R324426 (subject property) for the
2011-12 tax year.

A case management conference was held on December 13, 2011, during which the
parties agreed to file cross-motions for summary judgment. Oral argument was held by
telephone on May 8, 2012. Plaintiff was represented by Erick Haynie, Attorney at Law, Perkins
Coie LLP. Defendant was represented by Lindsay Kandra, Assistant County Council.

## I. STATEMENT OF FACTS

Plaintiff owns 48 contiguous acres of land on the outskirts of the city of Portland but
within the city limits, located along NW Skyline Boulevard, a portion of which is within the
urban growth boundary. (Stip Fact 1, ¶ 1; Decl of Joseph W. Angel at 1, 5.) This appeal
involves a portion of that property.

/ / /

/ / /

DECISION TC-MD 110980C 1

The subject property consists of three contiguous parcels that collectively comprise just under 34 acres[1] of land.  (Stip Facts, Ex A at 1, 4, 7.)  Plaintiff has owned the property for more than 30 years.  (Stip Facts at 1-2, ¶ 1.)  The property is zoned RF-Residential Farm/Forest by the City of Portland.  (Def's Mot for Summ J, Ex A.)  The property was specially assessed as forestland prior to Plaintiff's purchase in 1977, and has remained in forestland "deferral" ever since Plaintiff's purchase.  (Stip Fact 2.)  The majority of subject property is vacant, forested property (*Id.*)  On approximately one acre of the subject property, however, is a 2,200 square foot home, built in the 1950's.  (Decl of Joseph W. Angel at 1-2.)  Plaintiff lived in that home with his family for about three years before moving to a home closer to downtown Portland in 1980.  (*Id.* at 2.)  Plaintiff further states that he has rented the home to others since 1980.  (*Id.*)  Regarding the vacant, forested area of the subject property, Plaintiff stated that "[s]hortly before [his] purchase, the then-current owners of the Property (the Hallwylers), had planted a new stand of Douglas Fir trees on the Property," and that, since his purchase, Plaintiff "ha[s] allowed that new stand of Douglas Fir trees to grow and mature."  (*Id.*)

The City of Portland applied the Environmental Conservation zone (c) overlay to subject property in or about 1991.  (Stip of Facts at 2, ¶ 5.)[2]

The parties agree that Plaintiff submitted a Measure 37 application "for monetary compensation resulting from the impaired market value resulting from the imposition of '[e]nacted regulations that respect [] development of [the] property.' "  (Ptf's Memo In Opp To Assessor's Mot for Summ J at 9-10; Def's Mot For Summ J at 5.)  That measure, as originally

---

[1] The three notices of disqualification indicate that the acreage amounts involved are 25.21 acres of Account R324402, 8.38 acres of Account R324403, and 0.38 acres of Account R324402.

[2] The Future Urban zone and Scenic Resource zone overlays, which do apply to portions of subject property, are not discussed, as neither prohibits forestry. The Future Urban zone overlay "limits development in future urban areas" by "prohibiting the creation of new lots with a total area of less than 20 acres."  Code of the City of Portland, Oregon (PCC) 33.435.010.  The Scenic Resource zone overlay regulates trees that are "within the street setback (or the first 20 feet if no setback exists)."  PCC 33.480.040(B)(2)(g).

enacted and codified as ORS 197.352, "[r]equires government to either compensate landowners for reductions of real property fair market value due to certain 'land use regulation[s]' or modify, remove, or not apply such regulations." *MacPherson v. DAS*, 340 Or 117, 121, 130 P3d 308 (2006). Plaintiff's claim, submitted by Defendant with its Motion, sought compensation in the amount of $11.15 million. (Def's Mot For Summ J, Ex B at 5.) Plaintiff later apparently abandoned the claim and the parties agree Plaintiff did not receive any compensation stemming from that time. (Ptf's Memo in Opp to Assessor's Mot for Summ J at 10.)

In 2007, Plaintiff filed an Early Assistance Application with the City, requesting a Major Pre-application Conference on a proposed project on the subject property. (*See* Def's Mot for Summ J, Ex C.) On the application, when prompted to describe the project, including "proposed and existing uses," Plaintiff wrote, "proposed 20 lot residential subdivision." (*Id*. at 1.)

On or around June 22, 2011, Plaintiff received notices that subject property no longer qualified as designated forestland. (Stip of Facts at 2, ¶ 3.) The disqualification notices all indicate that the disqualification is taking place pursuant to ORS 321.359(1)(b)(C), because the subject property no longer qualifies for western Oregon designated forestland. (Stip Facts, Ex A at 1, 4, 7.) In clarifying the assessor's reasoning, the analysis state:

> "[i]t has come to our attention that either The City or County Planning
> Department has applied one of the following Environmental Overlays to your
> property: (c), (p). These overlays have restrictions such that the property no
> longer meets the definition of forestland."

Plaintiff requests that the notices be declared "null and void" and that subject property continue to be specially assessed as forestland. (Ptf's Compl at 2.) Plaintiff contends that Defendant improperly disqualified Plaintiff's property from forestland special assessment. (Ptf's Memo In Opp To Assessor's Mot for Summ J at 15; Ptf's Reply Memo in Support of his Mot for Summ J at 5.) Plaintiff also argues that Defendant improperly disqualified the subject

property from special assessment, insisting that Plaintiff's exploration of various land-use opportunities is not inconsistent with the requirements for designated forestland special assessment, that the environmental overlay zone within which Plaintiff's property lies is not an automatic legal bar to special assessment (because the zoning overlay does not automatically preclude the cutting of trees), and that Defendant lacks the expertise and legal authority to determine whether Plaintiff's property qualifies for special assessment as designated forestland. (Ptf's Mot For Summ J at 4-6; Ptf's Memo In Opp To Assessor's Mot for Summ J at 12-14.) Defendant contends that the subject property does not qualify for designated forestland special assessment because the requisite intended use of the property required by statute is not satisfied.

## II. ANALYSIS

A.    *Summary judgment and burden of proof.*

The parties have filed cross-motions for summary judgment. The standard for summary judgment is provided in Tax Court Rule (TCR) 47 C,[3] which states in pertinent part:

> "The court shall grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427.[4] A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).

/ / /

---

[3] TCR 47 is made applicable through the Preface to the Magistrate Division Rules, which state in pertinent part that "[i]f circumstances arise that are not covered by a Magistrate Division rule, rules of the Regular Division of the Tax Court may be used as a guide to the extent relevant."
    [4] All references to the Oregon Revised Statutes (ORS) are to 2009.

B.    *Whether the disqualification from forestland special assessment was in error*

The general issue before the court is whether the disqualification of subject property from forestland special assessment was in error.  To qualify for special assessment, the following statutory definition must be met:

> " 'Forestland' means land in western Oregon that is being held or used for the predominant purpose of growing and harvesting trees of a marketable species and has been designated as forestland or land in western Oregon, the highest and best use of which is the growing and harvesting of such trees."

ORS 321.257(2).   When the legislature enacted the special assessment of western Oregon forestland, the program was established "as a means of:

> "(a) Recognizing the long-term nature of the forest *crop* and fostering the public policy of Oregon to *encourage the growing and harvesting of timber*.
>
> "(b) Protecting the public welfare by assuring that the citizens of the state and future generations shall have the benefits to be derived from the continuous *production of forest products* from private forestlands."

ORS 321.262(2).  (Emphasis added.)  Thus, under ORS 321.257(2), there are two ways in which land may meet the definition of "forestland."  First, the land must be (a) located in western Oregon; (b) "held or used for the predominant purpose of growing and harvesting trees of a marketable species"; and (c) designated as forestland.  To satisfy the second, alternate definition, the land must (a) be located in western Oregon and (b) have the highest and best use of growing and harvesting of trees of a marketable species.

The parties do not debate the highest and best use of the land.  Thus, it is the first of the two definitions that is at issue.  The parties also agree that the land had previously been designated as forestland, so the only remaining questions are whether the subject property was being held or used for the predominant purpose of growing and harvesting trees of a marketable

/ / /

species, and whether the assessor had authority to disqualify the property from forestland special assessment.

    1.      *Assessor's statutory authority*

Plaintiff argues that it is the State Forester, not the county assessor, that determines whether or not property qualifies as "forestland." Under Oregon law, "[a]n owner of land desiring that it be designated as forestland shall make application *to the county assessor * * *.*" ORS 321.358(1). After being designated forestland, the land "shall be valued as such until *the assessor* removes the forestland designation under paragraph (b) of this subsection." ORS 321.359(1)(a) (emphasis added). "The county assessor shall remove the forestland designation upon * * * [d]iscovery *by the assessor* that the land is no longer forestland[.]" ORS 321.359(1)(b)(C) (emphasis added). " 'Shall' is a command: 'it is used in laws, regulations, or directives to express what is mandatory.' " *Preble v. Dept. of Rev.*, 331 Or 320, 324, 14 P3d 613 (2000) (citations omitted). Not only does the county assessor have statutory authority to disqualify the land from special assessment, the duty is mandatory if it is discovered that the land is no longer forestland. This court has, in detail, explained the process, stating that removal:

> "is accomplished by the assessor physically making changes to the assessment records. Forestland designation is 'removed' by changing the assessment records so that they no longer indicate that the property is qualified for special assessment. Until these changes are made to the records, the forestland designation is not 'removed' from the property."

*Kliewer v. Dept. of Rev.*, 15 OTR 139, 143 (2000).

Plaintiff's contention that it is state forester, not the assessor, that determines whether land qualifies as forestland, is not completely without any basis in law. The legislature has given the Department of Revenue the authority to "[m]ake such rules and regulations it deems proper to regulate its own procedure and to effectually carry out the purposes for which it is constituted."

/ / /

ORS 305.100. Accordingly, the Department of Revenue enacted OAR 150-321.358(4), which states

that in order to be designated as "forestland":

> "(1) * * * the land must have growing upon it at least the number of established trees per acre set by the state forester in OAR 629-610-0020. The established trees must be a marketable species acceptable to the state forester as described or set forth in OAR 629-610-0050.
>
> "(2) If the land does not meet the minimum requirements of section (1) of this rule, the owner must give the assessor a written management plan for establishing trees to meet the minimum stocking requirements."

Thus, the state forester is given authority to designate minimum stocking requirements and

acceptable species, but it is the assessor that determines whether the landowner has met, or has plan

in place to meet, those requirements.

In conclusion, contrary to Plaintiff's assertion that it is the state forester, and not the

assessor, who has the statutory authority and relevant expertise to determine if property is

forestland, the relevant statutes provide that the owner applies to the assessor for forestland

special assessment designation, per ORS 321.358, and the assessor determines whether such

designation should be removed, per ORS 321.359(1)(a)(C).

2.     *Plaintiff's purpose*

To meet the definition of "forestland," land that has been designated forestland must be

held or used for the predominant purpose of growing and harvesting trees. Thus, the issue is

whether Plaintiff's predominant purpose was growing and harvesting trees of a marketable

species.

a.     *The conservation zone overlay*

The conservation zone overlay applied to the subject property may be evidence proving

that Plaintiff did not have the requisite purpose of growing and harvesting trees of a marketable

species. The disqualification notices sent by Defendant declared that subject land "is no longer

in a qualifying use ***." (Ptf's Ex A at 1, 4, 7.) The notices stated that:

> "It has come to our attention that either The City or County Planning Department
> has applied one of the following Environmental Overlays to your property: (c),
> (p). These overlays have restrictions such that the property no longer meets the
> definition of forestland."

(*Id.*)

At the outset, the court notes the parties agree that the subject property does not lie within the (p) zone overlay, but rather, only the Environmental Conservation zone (c) overlay. The purpose of the (c) overlay is to "conserve[] important resources and functional values in areas where the resources and functional values can be protected while allowing environmentally sensitive urban development." Code of the City of Portland, Oregon (PCC) 33.430.017.[5] While the code does not expressly prohibit forestry, the overlay's restrictions hinder the harvesting of trees, and such harvesting would seem to be the antithesis of the overlay's stated purpose of "conserv[ing] important resources." *Id.* Plaintiff has not suggested, nor is it probable, that "environmentally sensitive urban development" was meant to include harvesting timber. *Id.*

Thus, while not an absolute bar to forestry, the presence of the (c) overlay makes a "predominant purpose" of "growing and harvesting trees," as required by ORS 321.262(2), difficult. From a factual standpoint, Plaintiff has made no attempt to work with the City of Portland to establish how and when the harvesting of trees on subject property could take place without being in violation of the restrictions imposed through the overlay. Plaintiff has not carried his burden to establish that forestry is consistent with a (c) overlay and the stated PCC goals of encouraging "environmentally sensitive urban development." PCC 33.430.017.

> b. *Other evidence of purpose*

Plaintiff's intent must be considered when determining the purpose for which subject

---

[5] All references to the Code of the City of Portland are to the 2012 version, as there is no material difference between it and the 2011 version.

property is "being held or used." The parties proffer evidence to demonstrate both Plaintiff's expressed intent, as well as Plaintiff's intent as revealed through overt actions. (*See* Decl of Joseph W. Angel; Def's Mot for Summ J, Exs B and C.) Plaintiff claims that it has always been his intention to sell the timber and states that "[a]lthough in my business judgment the time for selling my timber has not yet arrived, I am ready, willing and able to harvest and sell my trees when it makes business sense to do so." (Decl of Joseph W. Angel at 3, ¶ 9.) However, Plaintiff has not harvested any trees on subject property since purchasing it in 1977. (*See id.*) Taken alone, that fact does not preclude a finding that Plaintiff's predominant purpose is the "growing and harvesting [of] trees of a marketable species." *See, e.g.*, *Ferrero v. Clatsop County Assessor*, TC-MD No 080984D, WL 2086012 at *3, *4 (June 24, 2009) (finding that the property at issue qualified for forestland special assessment despite the fact that "the trees [had] not been harvested since [the 1970s] except for storm-damaged trees"). Plaintiff claims that over the years he has "consulted with a business colleague *** with a background in timber sales." (Decl of Joseph W. Angel at 3, ¶ 9.) However, Plaintiff presents no evidence or documentation of any serious inquiries into the appropriate timing or logistics of harvesting his trees. If such was Plaintiff's purpose, it seems he would have taken steps toward reaching that objective at some point during his 30-plus years of ownership.

As mentioned above, one way to demonstrate a predominate purpose of growing and harvesting trees is to file a management plan with the assessor when applying for forestland designation. *See* OAR 150-321.358(4)(2). Although not necessary in this case, Plaintiff could have filed a similar document in an attempt to show a more definite purpose and concrete plan of action, but did not do so.

Defendant claims that Plaintiff's actions show that his predominant purpose was not the growing and harvesting of trees but was instead residential development. (*See* Def's Mot for Summ J at 7.) Because the court cannot know Plaintiff's subjective intent, it must rely instead on Plaintiff's overt actions in order to determine his purpose regarding subject property.

In 2006, Plaintiff filed a Measure 37 claim seeking substantial compensation ($11.15 million) for the alleged diminution in value of his property due to changes and certain zoning regulations restricting the development potential of the subject property. Only one year later, Plaintiff in 2007 filed an Early Assistance Application with the City, requesting a Major Pre-application Conference regarding a proposed division of subject property into a 20 lot residential subdivision. (*See* Def's Mot for Summ J, Ex C.)[6] The purpose of a Pre-application Conference is defined in PCC 33.730.050(A), which provides in relevant part:

> "The pre-application conference informs the applicant of the substantive and procedural requirements of this Title, provides for an exchange of information regarding applicable requirements of other City Codes, and identifies policies and regulations that create opportunities or pose significant problems for a proposal."

An initial inquiry is not a request for permission,[7] and falls short of "recording a subdivision plat under ORS Chapter 92," which would trigger removal of forestland designation under ORS 321.359(1)(b)(D). After learning at the Pre-application Conference that any development of subject property would be difficult, Plaintiff did not pursue the matter further. (Ptf's Memo in Opp'n to Def's Mot for Summ J at 11.) As Plaintiff states, his "*development efforts* to date have only been conceptual and exploratory." (Decl of Joseph W. Angel at 4, ¶ 11.) (Emphasis added.) However, Plaintiff offers no evidence of his forestry efforts to date.

---

[6] Plaintiff's 2006 filing of a Measure 37 Claim for Compensation asking that the City of Portland "modify, remove or not apply" the restrictions placed on subject property (*see* Def's Mot for Summ J, Ex B) is not applicable to Plaintiff's predominant purpose for holding subject property and is irrelevant to disqualification from special assessment.

[7] Defendant claims that Plaintiff *sought permission* to create a 20 lot residential subdivision on the property. (Def's Mot for Summ J at 7.)

Plaintiff has never officially met with a forestry expert and does not have a forest management plan in place (though neither is required by statute). Plaintiff did, however, submit an Early Assistance Application to inquire after residential development, an application that noted an accompanying fee requirement of $2,040. (*See* Def's Mot for Summ J, Ex C.) The court can only infer Plaintiff's intent based on his overt actions, here expressed by inquiries made and resources expended. When enacting the special assessment of western Oregon forestland, the Legislature intended to encourage the growing *and harvesting* of trees. In his over 30 years as the owner of subject property, Plaintiff has not taken any noteworthy actions toward harvesting trees on subject property.

## III. CONCLUSION

While no single one of these elements is dispositive, they can be used in total to determine the "predominant purpose" for which subject property is "being held or used." ORS 321.257(2). Plaintiff's overt actions reveal an intention to hold and use the property in the manner that generates the greatest financial gain, and the actions thus far demonstrate a predominant purpose of residential development while failing to demonstrate a purpose of growing and harvesting trees. Coupled with the conservation overlay, Plaintiff's actions suggest that subject property was not "being held or used for the predominant purpose of growing and harvesting trees of a marketable species" and the court so concludes. Accordingly, Defendant was authorized to, and properly did, disqualify the subject property from forestland special assessment. Now, therefore,

/ / /

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied.  Subject property, identified as Accounts R324402, R324403, and R324426, did not qualify as designated forestland for tax year 2011-12, and Defendant's disqualification is sustained.

Dated this ___ day of August 2012.


_____
DAN ROBINSON
MAGISTRATE


***If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.***

***This document was signed by Magistrate Dan Robinson on August 20, 2012. The Court filed and entered this document on August 20, 2012.***